Lela Jeaneen **SLANKARD**,
Plaintiff/Appellant,

v.

John A. **THOMAS**, Defendant/Cross-claimant/Appellant, and Anita Oakes, Defendant ad litem for Wendell Woosley, Deceased, Defendant/Respondent.

Nos. 19712, 19797.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 31, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 22, 1995.

Application to Transfer Denied
Jan. 23, 1996.

Gayle L. Crane and Donald E. Sotta, Joplin, for Appellant Slankard.

Russell A. Ward, Joplin, for Appellant Thomas.

William J. Lasley, Flanigan, McCanse & Lasley, Carthage, for Respondent Oakes.

GARRISON, Judge.

These appeals involve two injury claims arising from an automobile accident on May 26, 1988 in Newton County, Missouri. The accident in question occurred when a westbound pickup truck occupied by Appellant,

Lela Jeaneen Slankard (Slankard),[1] and Defendant/Appellant John A. Thomas (Thomas) collided with an eastbound vehicle operated by Wendell Woosley (Woosley). Both Slankard and Thomas were injured, and Woosley died as a result of the collision. Slankard filed suit against both Thomas and Woosley (by his defendant ad litem, Anita Oakes, hereafter referred to as "Oakes" or "Oakes/Woosley") alleging that she was a passenger in the truck operated by Thomas, and that both he and Woosley were negligent in causing the collision. Thomas later filed a cross-claim against Oakes/Woosley seeking to recover damages for his injuries.

Slankard settled her claim against Thomas and executed a release and stipulation for dismissal. Oakes thereafter filed a motion for summary judgment on the theory that the release was a general release which relieved all potential tort-feasors from liability, including Woosley. Slankard appeals, in Case No. 19712, from the trial court's order sustaining that motion.

Thomas proceeded to trial on his claim against Oakes/Woosley. Slankard, called as a witness by Thomas, was cross-examined about the settlement of her claim against Thomas. During closing argument, the attorney for Oakes/Woosley argued that Slankard, not Thomas, had been driving the vehicle they occupied, and that she and Thomas had testified that Thomas was the driver to give Slankard an opportunity to collect against both Thomas and Oakes/Woosley. Following a jury verdict in favor of Oakes/Woosley, Thomas appeals in Case No.

1. We refer to the parties by their last names for purposes of brevity and clarity only. No disrespect is intended.

2. All references to statutes are to RSMo 1986, and all references to rules are to Missouri Rules of Court, V.A.M.R.

3. For and in consideration of the sum of SEVENTY THOUSAND DOLLARS ($70,000.00) being paid to Lela Jeaneen Slankard by Farmers Insurance Company, Inc., on behalf of John D. Thomas, a/k/a John A. Thomas, and hereinafter John D. Thomas, receipt of which is hereby acknowledged, Lela Jeaneen Slankard does for herself, her heirs, personal representatives, and assigns, hereby fully and forever release, discharge, and acquit John D. Thomas, his

19797, claiming error in connection with such testimony and closing argument.

### CASE NO. 19712

■ Slankard's allegations of error on this appeal relate to the entry of the summary judgment in favor of Oakes/Woosley based on the release which she executed. The propriety of a summary judgment is purely an issue of law which an appellate court reviews *de novo* on the record submitted. *ITT Commercial Fin. Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The criteria used by an appellate court in reviewing the entry of a summary judgment are no different from those which should be employed by the trial court. *Id.*

In her first point relied on, Slankard contends that the trial court erred in sustaining Oakes/Woosley's motion for summary judgment because, in doing so, it construed the release she signed, in settling with Thomas, as a general release contrary to the provisions of § 537.060.[2] That statute provides, in part:

> When an agreement by release, covenant not to sue or not to enforce a judgment is given in good faith to one of two or more persons liable in tort for the same injury or wrongful death, such agreement shall not discharge any of the other tort-feasors for the damage unless the terms of the agreement so provide....

The release signed by Slankard is set out, in pertinent part, below.[3] The trial court

heirs, personal representatives, and assigns, and in addition, Farmers Insurance Company, Inc. . . . and all other persons, firms, and corporations whomsoever, from any and all claims, demands, obligations, actions, and causes of action, whether known or unknown, and whether accrued or yet to accrue, which she now has or might hereafter have as a direct or indirect result of injuries sustained . . . [on] the 26th day of May, 1988. . . .

It is understood and agreed by the parties hereto that the aforesaid sum is paid by Farmers Insurance Company, Inc., on behalf of John D. Thomas in full compromise, settlement, and satisfaction of the aforementioned claims and actions, including those consequences thereof which may hereafter develop as well as those which have already developed or are now appar-

held, in finding a lack of a genuine issue as to any material fact, that the release was a general release and a complete bar to any claim Slankard had against Oakes/Woosley.

Slankard acknowledges in her brief that it may be argued "that the terms of the Release do provide for release of all tort-feasors" but contends that this is contrary to the intent of the statute. In doing so, she argues that while the release contained "overly broad language," it did not specifically release or mention Oakes/Woosley, there was no contractual relationship between Thomas and Oakes/Woosley, and Oakes took no part in the negotiation process.

Slankard relies exclusively on *Elsie v. Firemaster Apparatus*, 759 S.W.2d 305 (Mo. App.E.D.1988). In *Elsie*, the plaintiff sued his employer claiming damages arising from an automobile accident. He also filed a separate suit against the driver of another vehicle involved in the accident and that driver's employer. Plaintiff then settled with his employer, Boswell Oil Company, Inc., and executed a release which stated that he did thereby "release and forever discharge Boswell Oil Company, Inc., its heirs, executors, administrators, successors, insurers and assigns ... from each and every right or claim" which he then had or might thereafter have, and that it was his full intention to forever resolve any and all claims he had against "Boswell Oil Company, Inc." *Id.* at 307–08. The appellate court noted that pursuant to § 537.060, the release of one tortfeasor does not discharge other tort-feasors unless the terms of the agreement so provide. *Id.* at 307. The court held, however, that the release in *Elsie* did not release the other defendants and reversed the entry of a summary judgment in their favor. *Id.*

In the instant case, the release named not only Thomas and his insurer, specifically, but it also described the persons released as "all other persons, firms, and corporations whomsoever." Similar language appeared in a release signed by the plaintiff in *Ellis v. Reisenbichler*, 712 S.W.2d 468 (Mo.App.E.D. 1986).[4] In *Ellis*, the court held that the release was a "general release and by its express terms releases plaintiff's entire cause of action." *Id.* at 469. It also acknowledged § 537.060 and its provision that "a release given to one or two or more persons does not discharge any other tort-feasor ... 'unless the terms of the agreement so provide....' " The court held, however, that the release in question did, by its express terms, release the other tort-feasors. *Id.*

In *Rudisill v. Lewis*, 796 S.W.2d 124 (Mo. App.W.D.1990), releases executed by plaintiffs, in describing the persons released, named one tort-feasor and his insurer specifically, but also included the following: "and all other persons and organizations who are or might be liable, from all claims for all damages which I sustained...." *Id.* at 126–27. The court said that the releases "expressly relieve all actual or potential tortfeasors from liability and are therefore not silent as to respondent" and found that § 537.060 did not require a different result because it "does not require the court to ignore a plain, clear divestiture of all claims in a general release." *Id.* at 128.

■ The release in the instant case is not silent as to the identity of others within its scope. Thus, § 537.060 was not operative to preserve any claims Slankard may have had against Oakes/Woosley. Rather, the release

ent and known, the consideration herein expressed being contractual and not mere matter of recital.

Lela Jeaneen Slankard, plaintiff, does agree to dismiss with prejudice all actions stated in the suit thereof against John A. Thomas, defendant, in the Circuit Court of Newton County, Missouri, Case No. CV392–632CC, at the cost of defendants therein.

It is understood and agreed by Lela Jeaneen Slankard that the payment of the aforementioned sum is being paid by Farmers Insurance Company, Inc., on behalf of John D. Thomas, and that nothing herein contained shall be construed to

be an admission of liability on the part of John D. Thomas, the asserted liability thereof being expressly denied. Further, it is expressly understood that John D. Thomas retains and reserves any and all causes of action which he might have against Anita Oakes, defendant ad litem for Wendell Woosley, Deceased.

Executed this 23 day of December, 1993....

4. The release in *Ellis* provided that it released a specifically named person "and *any* other person, firm or corporation charged or chargeable with responsibility for liability ... from *any and all claims*...." *Id.* at 469.

is general because it specifically applied to "all other persons."

The release in question also recited that Slankard was releasing "any and all claims, demands, obligations, actions, and causes of action, whether known or unknown, and whether accrued or yet to accrue...." It then provided that $70,000 was being paid "in full compromise, settlement, and satisfaction of the aforementioned claims and actions...." It is, therefore, clear that the release not only specifically named "all other persons," which would include Oakes/Woosley, but it also acknowledged satisfaction of all claims arising from the accident in question.

■ In *Rudisill v. Lewis,* 796 S.W.2d at 127, the court, citing *Liberty v. J.A. Tobin Const. Co.,* 512 S.W.2d 886, 890 (Mo.App. W.D.1974), acknowledged that "the deciding factor in characterizing a release as general is 'what is released not who is released by the document....'" A party is entitled to only one satisfaction for the same wrong, and receipt of full satisfaction from either tortfeasor for the wrong for which both are liable bars plaintiff's recovery from the other for the same injury. *Walihan v. St. Louis–Clayton Orthopedic Group, Inc.,* 849 S.W.2d 177, 180 (Mo.App.E.D.1993); *Liberty v. J.A. Tobin Const. Co.,* 512 S.W.2d at 889–90. Slankard's first point is denied.

In Slankard's second point, she contends that the trial court erred in entering the summary judgment because, in construing the release as plain and unambiguous, it failed to consider the intent of the parties, the fact that general language in a release is subordinate to that which is specific, and that parol evidence is admissible to explain ambiguous language in a release.

■ In construing a release, as with any contract, the intention of the parties governs and any question concerning the scope and extent of the release is to be determined by what may fairly be said to be in the parties' contemplation, which in turn is resolved in the light of all the surrounding facts and circumstances under which the parties acted. *State ex rel. Normandy Orthopedics, Inc. v. Crandall,* 581 S.W.2d 829, 833 (Mo. banc

1979); *Montrose Sav. Bank v. Landers,* 675 S.W.2d 668, 670–671 (Mo.App.W.D.1984). The intent of the parties, however, is governed by the language used in the release. *Troxell v. Welch,* 687 S.W.2d 902, 906 (Mo. App.W.D.1985); *Adriatic Ins. Co. v. Brewer,* 657 S.W.2d 692, 693–94 (Mo.App.E.D.1983); *State ex rel. Stutz v. Campbell,* 602 S.W.2d 874, 876 (Mo.App.E.D.1980). *See also Rudisill v. Lewis,* 796 S.W.2d at 126. Plain language forecloses speculation about intent of the parties. *Clark v. Booth,* 660 S.W.2d 316, 318 (Mo.App.W.D.1983).

■ Slankard argues that she did not intend to release her claims against Oakes/Woosley. Several Missouri cases have held or indicated, however, that release language similar to that which releases "all other persons, firms, and corporations whomsoever" is unambiguous and general in nature. *Rudisill v. Lewis,* 796 S.W.2d at 127; *Ellis v. Reisenbichler,* 712 S.W.2d at 469; *Liberty v. J.A. Tobin Const. Co.,* 512 S.W.2d at 891. Additionally, the release in question recited that the consideration paid was "in full compromise, settlement, and satisfaction of the aforementioned claims and actions" which were described as "any and all claims ... and causes of action, whether known or unknown, and whether accrued or yet to accrue, which she now has or might hereafter have as a direct or indirect result of injuries" sustained in the accident in question. Such provisions are also general and unambiguous. *Andes v. Albano,* 853 S.W.2d 936, 941 (Mo. banc 1993); *Moore v. Bentrup,* 840 S.W.2d 295, 297 (Mo.App.E.D.1992); *Ellis v. Reisenbichler,* 712 S.W.2d at 469. The fact that there is no mention of Oakes/Woosley in the release does not change the effect of language which is general and unambiguous. *Clark v. Booth,* 660 S.W.2d at 318.

■ Language which is plain and unambiguous on its face will be given effect within the context of the agreement as a whole unless the release is based on fraud, misrepresentation or unfair dealings, in which event the court may look to the parties' intent to ascertain the scope of the release. *See Andes v. Albano,* 853 S.W.2d at 941; *Montrose Sav. Bank v. Landers,* 675 S.W.2d at

671. Slankard makes no such claims in the instant case.

Slankard relies primarily on *Hawes v. O.K. Vacuum & Janitor Supply Co.*, 762 S.W.2d 865 (Mo.App.E.D.1989), in which the release recited that a specific company was being released "and any other person, firm or corporation charged or chargeable with responsibility or liability...." *Id.* at 866–67. The appellate court acknowledged that this was language which was general and unambiguous and that had it been the only relevant language "then the parties' intentions would be clear, parol evidence would be inadmissible, and the release would extinguish plaintiff's cause of action against defendants." *Id.* at 868. The release additionally provided, however, that the person signing it agreed to hold in trust for Home Insurance Company any proceeds up to the amount being paid for the release "received through any settlement with or judgment against any person or organization in connection with the aforementioned accident...." *Id.* at 867. The appellate court held that this additional language demonstrated an understanding that the plaintiff intended to pursue other tort-feasors and at least created an ambiguity as to the parties' intentions. *Id.* at 868.

The additional language in the release in *Hawes* distinguishes that case from the present one. Here, the release contains no language which could be said to indicate an intent to pursue others. The release language whereby Slankard agreed to dismiss, with prejudice, the action against Thomas does not necessarily indicate an intention to pursue Oakes/Woosley. This is especially true since the next paragraph contains a specific renunciation of right by Thomas against Oakes/Woosley, but then has no similar renunciation by Slankard.

Slankard also refers to the rule of construction that any general language, when used in connection with a specific matter, will be presumed to have been used in subordination to it and will be construed and limited accordingly. *Moore v. Bentrup*, 840 S.W.2d at 297; *Hawes v. O.K. Vacuum & Janitor Supply Co.*, 762 S.W.2d at 867–68; *Holly Inv. Co. v. Land Clearance for Redevelopment Auth.*, 646 S.W.2d 126, 129 (Mo.App.

W.D.1983). She argues that the general language was that which released "all other persons, firms, and corporations whomsoever, from any and all claims" arising from the accident in question. The language which she labels as specific and which she argues should control is that which refers to Thomas by name and the fact that the release provides for the dismissal of Thomas alone. She concludes, therefore, that those references, being specific, should govern.

■ The reference to "all other persons, firms, and corporations" in the release was an explicit designation of those released from the claims. *See Ellis v. Reisenbichler*, 712 S.W.2d at 469. This includes Oakes/Woosley. The fact that the release provided for a dismissal only as to Thomas does not constitute specific language that the release did not apply to Oakes/Woosley.

It is also significant that a general release such as that in the instant case (one which acknowledges full compromise and satisfaction of all claims arising from the accident in question) disposes of the whole subject matter or cause of action involved. *Rudisill v. Lewis*, 796 S.W.2d at 127 (citing *Liberty v. J.A. Tobin Const. Co.*, 512 S.W.2d at 890). Slankard does not dispute that her entire cause of action was released; rather, she focuses on whether Oakes/Woosley came within its terms. Since the cause of action was released by the language used, the provision that called only for a dismissal as to Thomas could hardly constitute specific language to the effect that the scope of the release was limited. We are unable to conclude, therefore, that the language referred to by Slankard should have the effect of changing the other unambiguous, express language of the release.

Finally, Slankard contends in this point that the release was ambiguous, thereby authorizing consideration of parol evidence. The parol evidence she refers to is the stipulation for dismissal and order of dismissal whereby Thomas was dismissed in the instant case. The stipulation provided that nothing contained in it "shall operate as a dismissal of plaintiff's claims or causes of action against the remaining defendant" Oakes/Woosley, "it being expressly under-

stood that plaintiff retains and reserves any and all causes of action which she might have against said defendant." The order of dismissal provided that in accordance with the stipulation, the petition was dismissed against Thomas only and that "nothing contained in this Order shall be construed as dismissing or affecting any cause of action which plaintiff might have against the remaining defendant," Oakes/Woosley.

█ A release, such as the one in the instant case, in which the intent is expressed by its plain language is not subject to be varied by parol or extrinsic evidence. *Ellis v. Reisenbichler,* 712 S.W.2d at 469. As indicated earlier, *Rudisill v. Lewis,* 796 S.W.2d at 126–27, involved releases which specifically named one defendant but also provided that they extended to "all other persons and organizations who are or might be liable, from all claims for all damages" sustained in the accident in question. Later, the plaintiffs executed "corrected releases" by which they sought to specifically reserve all rights and causes of action against any other person as provided for in § 537.060. In holding that the corrected releases were inadmissible on the issue of intent, the appellate court said, among other things:

> Finally, the "corrected" releases are inadmissible as evidence of the parties' intent in the original releases because the plain language of the original releases manifests their intent and cannot be modified or varied by parol or extrinsic evidence.

*Id.* at 126. The same result applies in the instant case.

*Hawes v. O.K. Vacuum & Janitor Supply Co.,* 762 S.W.2d at 868, acknowledges that language in a release such as that in the instant case, since it is general and unambiguous, expresses the intention of the parties, making parol evidence inadmissible. The *Hawes* court, however, found other language in the release which created an ambiguity. *Id.* As indicated above, we find none in the instant release.

Slankard cites *State ex rel. Normandy Orthopedics, Inc. v. Crandall,* 581 S.W.2d at 834. That case involved an attempted claim for medical malpractice against two doctors, as independent and successive tort-feasors,

after the plaintiff signed a general release in favor of the original tort-feasor. The court held that parol evidence could well be of value in resolving the issue of whether the doctors were entitled to benefit from the release. *Id.* However, this issue revolved around not only the identity of the parties intended to be included in the scope of the release, but also whether there had been full satisfaction of the plaintiff's claim. *Id.* at 831–32. The Supreme Court noted that the plaintiff had offered evidence that he intended to release only the original tort-feasor, and also that the amount received was not in full satisfaction of the claim. *Id.* at 832. The court also cited a number of cases which approved the application of a release to another tort-feasor where the plaintiff had not offered evidence that the amount received was less than full satisfaction of the claim. *Id.* at 831–32.

In the instant case, Slankard referred the trial court to only the stipulation and order of dismissal which went to the identity of the persons intended to be released. The parol and extrinsic evidence which she says should have been considered did not refer to the issue of whether there had been a full satisfaction of her claims, even though the release had clearly acknowledged a satisfaction of any and all claims arising from the accident in question. For this reason alone, *Crandall* is not applicable here. Additionally, other Missouri courts have indicated that *Crandall* applied only to cases involving independent, successive tort-feasors as opposed to a true joint tort-feasor. *Clark v. Booth,* 660 S.W.2d at 318. Slankard's second point is, therefore, denied.

In Slankard's third point, she contends that the trial court erred in entering the summary judgment "because the court failed to look to the pleadings, depositions, and admissions on file, as required by Rule 74.04, before making a determination that there is no genuine issue of material fact." Initially, we note that this point violates Rule 84.04(d), which requires that points relied on shall state "wherein and why" the rulings of the trial court are claimed to be erroneous. The oft-cited case of *Thummel v. King,* 570 S.W.2d 679 (Mo. banc 1978), interpreted the

requirements of Rule 84.04(d). The rule requires a statement which ordinarily closely approximates what the appellant believes should have been the trial court's conclusion of law and then *"wherein* the testimony or evidence gives rise to the ruling for which appellant contends." *Id.* at 685. In the instant case, we have reviewed the argument section of Slankard's brief to determine the import of the point, a process we are not obliged to undertake. *Greene County Concerned Citizens v. Board of Zoning Adjustment,* 873 S.W.2d 246, 255 (Mo.App.S.D. 1994).

As we interpret Slankard's brief, she contends that the trial court should have looked to the pleadings in the case, which included the stipulation and order of dismissal, to determine whether there was a genuine issue of material fact. Slankard, however, brought these documents to the court's attention in response to the motion for summary judgment. She argues that those documents made it clear that the parties intended to release only Thomas, and that there was at least a genuine issue of fact precluding entry of the summary judgment.

 Whether or not language in a contract is ambiguous is a question of law for the trial court. *Maryland Casualty Co. v. Martinez,* 812 S.W.2d 876, 880 (Mo.App.W.D. 1991). A summary judgment is appropriate when the contract is clear and unambiguous in its construction. *Id.* In considering a summary judgment based on a contract, the trial court should not consider evidence of intent when the document is plain and unambiguous. *Bankers Capital Corp. v. Brummet,* 637 S.W.2d 424, 431 (Mo.App.W.D.1982). *See also Rudisill v. Lewis,* 796 S.W.2d at 126 (the appellate court held that a "corrected release" offered on the issue of intent as to the scope of the release was "not a relevant factor in evaluating the trial court's grant of summary judgment" because the plain language of the document manifested the intent of the parties and could not, therefore, be modified or varied by parol or extrinsic evidence).

 Slankard relies on *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir. 1994), for the proposition that pleadings, discovery and affidavits are to be viewed in the light most favorable to the non-moving party and the trial court should draw all reasonable inferences in that party's favor. We do not disagree with that general statement of law. The *Allison* case, however, does not support the premise urged by Slankard in this point. There, the issue was not whether extraneous evidence could be considered in ruling a motion for summary judgment based on a release. Instead, the release in question contained language which clearly restricted its scope to the claims alleged in a particular suit, notwithstanding the fact that it also stated that "all other persons, firms, subsidiaries, and corporations" were being released. *Id.*

Slankard's third point is denied.

The judgment in Case No. 19712 is affirmed.

*CASE NO. 19797*

In his first point relied on, Thomas contends that the trial court erred in admitting evidence concerning the settlement of Slankard's claim against him. Prior to the trial of Thomas' claim against Oakes/Woosley, he filed a motion in limine seeking to exclude any evidence concerning the fact that Slankard had received $70,000 to settle her claim against him. The motion was overruled with the trial court indicating that the evidence was admissible to demonstrate the interest and bias of Slankard. During the trial, Thomas called Slankard as a witness and, on cross-examination, she admitted that she had received a sum of money paid on behalf of Thomas for the injuries she sustained in the accident. There was no objection to that testimony when it was given.

 A ruling on a motion in limine is interlocutory in nature. *Ellis v. Jurea Apartments, Inc.,* 875 S.W.2d 203, 210 (Mo. App.S.D.1994). It is a timely objection at trial, when the evidence is offered, which preserves the matter for review, and not the rejection of a motion in limine. *Id. See also Honey v. Barnes Hospital,* 708 S.W.2d 686, 694 (Mo.App.E.D.1986). A party waives any objection by failing to object when evidence, which had been the subject of a motion in

limine, is offered at trial. *Graf v. Wire Rope Corp.*, 861 S.W.2d 588, 590 (Mo.App.W.D. 1993).

In the instant case, the statement of facts in Thomas' brief contains the following:

On August 2, 1994, trial commenced as scheduled and just prior to opening statements, while Appellant's continuing objection was being made and argued, the Court ruled that it would not allow the use of Lela Slankard's allegations of negligence against Appellant, but that it would allow introduction of the settlement between Ms. Slankard and Appellant.

In the argument section of his brief, Thomas states:

Appellant contends that the trial court erred when it allowed, over Appellant's Motion in Liminie [sic] and continuing objection, evidence of the settlement between Appellant's insurer and the dismissed Plaintiff, Lela Slankard.

In neither instance was there a reference to the record on appeal indicating that a continuing objection was requested or permitted.

We have searched the record, *ex gratia*, in an effort to determine whether the claimed "continuing objection" could be substantiated. We have found that the motion in limine was argued after the jury was selected and before opening statements began. The trial court indicated that it would allow evidence of the settlement of Slankard's claim against Thomas on the issue of her credibility. There is no indication in the trial transcript, however, that Thomas attempted to make a continuing objection to the testimony at that time.

We have also discovered, in the supplemental legal file, a "Stipulation As To Record On Appeal" signed by counsel for Thomas and Oakes/Woosley. One of the paragraphs contains the following:

4. That prior to opening statements the attorneys approached the bench to allow Appellant John Thomas to make a continuing objection on the record to the Court's ruling on his Motion in Liminie [sic] so that said objections would not have to be made in the presence of the jury during trial.

This stipulation, however, does not indicate what occurred at that bench conference.

The trial court may reject a request for a continuing objection and require that any objections be made at the time the evidence is offered. *See Riley v. Riley*, 778 S.W.2d 666, 668–69 (Mo.App.W.D.1989); *State v. Lasley*, 731 S.W.2d 357, 359 (Mo. App.E.D.1987). Even if the trial court permits a continuing objection, its scope is limited to the basis upon which it was granted. *See Sawyer v. State*, 810 S.W.2d 536, 540 (Mo.App.E.D.1991).

On the basis of this record, we are unable to conclude that the trial court permitted a continuing objection. Likewise, we would be speculating to assume the basis or sufficiency of any such objections. We cannot, therefore, conclude that Thomas preserved this point for appellate review. This point is denied.

In Thomas' second point relied on, he claims that the trial court erred in "failing to prohibit Respondent's [Oakes/Woosley's] closing argument that [1] Appellant [Thomas] was negligent" and that [2] Slankard, rather than Thomas, was driving the vehicle at the time of the accident. He acknowledges that he made no objection to the arguments in question and that any review must be for plain error.

Pursuant to Rule 84.13(c), plain errors affecting substantial rights may be considered on appeal, in the discretion of the court. Relief for plain error, however, is warranted only in those exceptional circumstances when the reviewing court deems manifest injustice or a miscarriage of justice occurred. *Porter v. Erickson Transport Corp.*, 851 S.W.2d 725, 744 (Mo.App.S.D. 1993). It is rarely resorted to in civil cases. *Hammer v. Waterhouse*, 895 S.W.2d 95, 106 (Mo.App.W.D.1995); *Brown v. Mercantile Bank*, 820 S.W.2d 327, 335 (Mo.App.S.D. 1991).

In the first prong of this point, Thomas complains that the trial court erred in permitting an argument that he was negligent by driving on the wrong side of the road despite the fact that no comparative negli-

gence instruction was submitted, and his negligence was not an issue in the case. His statement of facts, however, does not refer to any such argument, despite the requirement of Rule 84.04(c) that it shall contain a fair and concise statement of the facts relevant to the questions presented. Likewise, in violation of Rule 84.04(h), the argument section of Thomas' brief contains no specific page references to the transcript where the argument referred to appears. We should not be expected to identify, by speculation, the specific remarks complained of. By failing to set forth the facts relevant to this claim and to specify the page references containing the statements complained of, Thomas preserves nothing for review with reference to this portion of the point. *See Pemiscot County Memorial Hosp. v. LIRC,* 825 S.W.2d 61, 63 (Mo.App.S.D.1992); *Nishwitz v. Blosser,* 850 S.W.2d 119, 123 (Mo.App.E.D.1993); *Kasper v. Helfrich,* 421 S.W.2d 66, 71 (Mo.App.E.D. 1967).

The second prong of this point refers to statements made by Oakes/Woosley's attorney during closing argument. He argued that following the accident, Slankard was found behind the steering wheel with a broken leg, head and internal injuries, and complaints of chest injuries. Thomas, who was found on the passenger side, had no complaints of chest injuries. He noted that the steering wheel of the truck was broken, and that both Slankard and Thomas had to be extricated from the vehicle. He then asked the rhetorical question of how or why Slankard would have crawled from the passenger side of the vehicle to the driver's side. His comments suggested that the story about Thomas being the driver was contrived because Slankard could not sue herself, the driver of the other vehicle (Woosley) was dead, and a claim was made against both Thomas and Oakes/Woosley with the intent of getting "two bites of the apple."

Thomas contends that the argument was error because the answer of Oakes/Woosley admitted that Thomas was the driver; the argument was beyond the scope of the evidence and instructions and was prejudicial by suggesting that the claim was based on false facts; and the argument was further prejudi-

cial because it suggested that Thomas and Slankard, who lived together, had colluded to claim that Thomas was driving in order for her to obtain the settlement against Thomas.

■ In the trial of Thomas' claim, however, there was no issue submitted to the jury about the identity of the driver of his vehicle, or whether he was guilty of negligence which caused or contributed to cause his damage. The only issue submitted to the jury was whether Woosley was negligent and Thomas was damaged as a direct result thereof. The plain error doctrine should not, however, be invoked to excuse mere failure to object to argument. *Glasscock v. Miller,* 720 S.W.2d 771, 777 (Mo.App.S.D.1986).

■ It is true that the answer of Oakes/Woosley admitted that Thomas was the driver of the other vehicle. Thomas did not object on that or any other basis, however, when the comments were made during closing argument. Additionally, the answer containing that admission was not offered in evidence and was not, therefore, presented as an admission against Oakes/Woosley. *See Kelsey v. Nathey,* 869 S.W.2d 213, 217 (Mo. App.W.D.1993).

Evidence that Slankard was behind the steering wheel and Thomas on the passenger side initially came from a record of the responding ambulance attendants introduced by Thomas without objection. Thereafter, Oakes/Woosley presented the testimony of an ambulance attendant and also introduced two ambulance reports disclosing the same information with no objection from Thomas. There was evidence, therefore, which would support the conclusion that Slankard was driving the vehicle occupied by Thomas.

It is rare that comments made during closing argument rise to the level of plain error. *Adams v. Children's Mercy Hosp.,* 848 S.W.2d 535, 545 (Mo.App.W.D.1993). Manifest injustice is distinguishable from and goes beyond prejudice. *Id.* Under the circumstances of the instant case, we cannot confidently conclude that the remarks referred to resulted in manifest injustice or a miscarriage of justice. This point is, therefore, denied.

**630**

In his final point, Thomas contends that the trial court abused its discretion in denying his motion for new trial because of the prejudicial effect of the errors alleged in his first two points. We initially note that denial of a motion for new trial is not an appealable order. *Hitt v. Martin,* 872 S.W.2d 121, 122 (Mo.App.E.D.1994). The right of appeal is statutory, and an order overruling a motion for new trial is not appealable. *Nickerson v. Moberly Foods, Inc.,* 781 S.W.2d 87, 91 (Mo.App.W.D.1989). Rather, the appeal must be from the judgment to which the motion was directed. *White v. Land Clearance for Redevelopment Auth.,* 841 S.W.2d 691, 694 (Mo.App.W.D. 1992).

The notice of appeal in the instant case refers to both the judgment and the motion for new trial. Assuming that the appeal was actually from the judgment entered, denial of a motion for new trial may be reviewed for an abuse of discretion. *See Kansas City v. Keene Corp.,* 855 S.W.2d 360, 372 (Mo. banc 1993); *Nickerson v. Moberly Foods, Inc.,* 781 S.W.2d at 91. We have already discussed, in the first two points of this appeal, the allegations of error which also form the underlying basis for this point. On the record and briefs presented to us, we are unable to conclude that the trial court abused its discretion in the instances alleged. This point is denied.

The judgment in Case No. 19797 is affirmed.

MONTGOMERY, P.J., and PREWITT, J., concur.