

# In the Missouri Court of Appeals
# Eastern District

### <u>DIVISION ONE</u>

| | | |
|---|---|---|
| PATRICK CARRON, | ) | No. ED112664 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of Cape Girardeau County |
| v. | ) | Cause No. 23CG-CC00150 |
| | ) | |
| MARK SCHABBING & | ) | Honorable Frank E. Miller |
| DARRYL GREEN, | ) | |
| | ) | |
| Respondents. | ) | Filed: January 21, 2025 |

### Introduction

Appellant Patrick Carron appeals from the trial court's summary judgment in favor of Respondents Mark Schabbing and Darryl Green in Appellant's action for tortious interference with a contract and business expectancy. On appeal, Appellant argues summary judgment was improper because the General Release and Waiver he signed as a part of his employment separation agreement did not release Respondents. Because Respondents were released by the General Release and Waiver, we affirm the trial court's summary judgment.

### Factual and Procedural History

#### Facts

Viewing the facts in the light most favorable to the non-moving party, *see Weeks v. St. Louis Cnty.*, 696 S.W.3d 333, 338 (Mo. banc 2024), the uncontroverted facts are as follows.

1

Appellant was CEO of Perry County Memorial Hospital ("PCMH" or "the Hospital"). In 2018, Appellant entered a contract with the Hospital extending his term by five years. On March 2, 2021, the Hospital terminated Appellant's employment. As part of Appellant's separation agreement with the Hospital, Appellant was entitled to 18 months of severance pay. Appellant executed a General Release and Waiver in exchange for the severance pay. The General Release and Waiver, in relevant part, provided that Appellant:

> unconditionally RELEASES, DISCHARGES, and ACQUITS PCMH and all its present, former, and future boards of trustees, officers, directors, employees, agents, attorneys, divisions, subsidiaries, predecessors, successors, insurers, related companies, shareholders, partners, and members of all of them ("Released Parties"), from and against any and all claims, charges, causes of action, or liabilities that [Appellant] has or may have against the Released Parties.

Respondents served as physicians with the Perryville Family Care Clinic ("PFCC" or "the Clinic"). The Clinic operated as the exclusive family medicine practice of the Hospital under a Professional Services and Administration Agreement ("PSA Agreement"). This PSA Agreement between the Clinic and the Perry County Health System ("Health System"), doing business as Perry County Memorial Hospital, stated:

> PFCC shall be the exclusive provider of . . . family medicine medical services to the Hospital, to enable Hospital to operate a full-time family medicine practice. . . . HOSPITAL shall provide nursing staff, non-physician personnel including clerical, administrative and support personnel, furniture, furnishings, equipment, supplies, and support services . . . . HOSPITAL shall . . . maintain and keep such facilities in good order and repair. . . . The Practice shall be conducted by HOSPITAL on a full-time basis with hours of service . . . to be determined by HOSPITAL subject to PFCC's sole discretion to determine staffing . . . . PFCC shall ensure its physicians . . . maintain membership in good standing on the . . . Medical Staff of HOSPITAL . . ..

Respondents served as chief of staff and in various physician director roles. For example, Respondent Green served as chief of staff at the time Appellant's employment was terminated. The chief of staff "runs medical staff meetings, can direct the medical staff, and develops and

2

implements policies relevant to the medical staff. The chief of staff has decision-making authority over credentialing and approval of physicians and medical staff." Similarly, Respondent Schabbing was physician director when Appellant's employment was terminated. The physician director "chairs meetings of the department at issue, makes decisions and advises committee members on best practices, and makes recommendations to the Health System about relevant practices and policies."

## Procedural History

Following his termination, Appellant filed a petition alleging that Respondents' "intentional and tortious conduct caus[ed] Perry County Memorial Hospital to breach its valid employment agreement with [Appellant]." According to Appellant's petition, "the Health System leases the operations of PCMH," Respondents "are both physicians and members of Perryville Family Care Clinic, PC," and "Perryville Family Care Clinic, PC, is an independent contractor with the Health System."

Specific to Respondent Schabbing, the petition alleged that he "informed administration, as well as numerous medical staff and Board members" that he had hired his daughter. Appellant became concerned, "approached . . . the Associate Vice President of Physician Practices, and insisted that she resolve the situation by . . . prohibit[ing] [Respondent's daughter] from gaining access to the Health System's facilities and electronic medical records system." The Associate Vice President informed Respondent Schabbing "that his daughter could no longer access the Health System facilities and electronic medical record system."

As for Respondent Green, Appellant's petition alleged "there was an immediate and urgent need for physicians to staff the emergency room at PCMH," and Respondent Green "filled in and covered at least one ER physician-shift(s)." Appellant also worked to have three other physicians

3

credentialed at the Hospital to cover the vacant ER shifts. When Appellant requested re-appointment of the three physicians by the credentialing committee, Respondent Green, the chairman of the committee, objected. "Thereafter, . . . Dr. Green sought to have Health System contracts and PCMH medical staff policies changed so that he could staff those additional shifts in the ER in order to obtain compensation directly from the Health System."

According to Appellant's petition, Respondents "arranged for a meeting of the Health System Board to be called immediately." The petition reiterated that "the Health System leased the operations of PCMH such that, presumably, the Health System Board had the authority to control the Employment Agreement between [Appellant] and PCMH." The Health System Board voted to place Plaintiff on leave without pay, based on information provided by Respondents, and later informed Appellant that he was terminated.

Respondents filed a motion for summary judgment, memorandum in support, and statement of uncontroverted material facts with supporting exhibits. In their motion, Respondents argued they were released by the General Release and Waiver signed by Appellant because they were members of the Clinic and qualified agents of the Hospital and the Health System.

In his opposition to Respondents' motion for summary judgment, Appellant argued he did not intend to release Respondents in the General Release and Waiver. Appellant maintained that the Hospital and the Health System were separate entities, and that the Health System, and in turn the Clinic, were not part of the Hospital. Therefore, according to Appellant, Respondents were not released pursuant to the terms of the General Release and Waiver.

The trial court granted summary judgment in favor of Respondents based on Respondents' motion and the related filings in support of the motion.

Appellant now appeals.

**Discussion**

In his single point, Appellant argues the trial court erred in granting summary judgment because Respondents failed to meet their burden to show that Appellant intended to release them in the General Release and Waiver. Appellant alleges: (1) the release is not a general release; (2) the release does not, on its face, clearly, precisely, and unequivocally identify Respondents; and (3) Appellant presented sufficient parol evidence demonstrating he did not intend to release Respondents such that a genuine issue of material fact exists as to Appellant's intent.[1]

Standard of Review

Our review of the trial court's grant of summary judgment is *de novo*. *Green v. Fotoohighiam*, 606 S.W.3d 113, 115 (Mo. banc 2020). In determining whether summary judgment is proper, we apply the same criteria as the trial court. *Id*. We will affirm the judgment of the trial court if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Id*.; Rule 74.04(c)(6). Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. *Fotoohighiam*, 606 S.W.3d at 116.

> A defending party may establish a right to judgment as a matter of law by showing:
>
> (1) facts that negate any one of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements, or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense.

---

[1] Respondents argue this Court should dismiss Appellant's brief because his sole point on appeal is multifarious in violation of Rule 84.04(d). Appellant's point is multifarious in that it "groups together multiple, independent claims rather than a single claim of error." *Barbieri v. Barbieri*, 633 S.W.3d 419, 432 (Mo. App. E.D. 2021). "Generally, multifarious claims of error preserve nothing for appeal and are subject to dismissal." *Id.* We nonetheless choose to review the point *ex gratia* because it is readily understood. *Cedar Cnty. Comm'n v. Governor Michael Parson*, 661 S.W.3d 766, 772 (Mo. banc 2023).

*ITT Com. Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 381 (Mo. banc 1993) (emphasis omitted).

<u>Analysis</u>

We first address whether the language of the General Release and Waiver releases Respondents. "Interpretation of a release or settlement agreement is governed by the same principles as any other contract." *Holmes v. Multimedia KSDK, Inc.*, 395 S.W.3d 557, 559 (Mo. App. E.D. 2013) (quoting *Mid Rivers Mall, LLC v. McManmon,* 37 S.W.3d 253, 255 (Mo. App. E.D. 2000)).

"In the absence of fraud, accident, mistake, or duress, the parol evidence rule prohibits the court from considering extrinsic evidence contradicting the terms of the agreement, unless the terms of the agreement are themselves ambiguous." *Id.* (quoting *Mid Rivers Mall*, 37 S.W.3d at 256). "Contract terms are ambiguous only if the language may be given more than one reasonable interpretation." *Id.* at 559–60 (quoting *Mid Rivers Mall,* 37 S.W.3d at 256). "Simply because parties disagree over the meaning of a contract does not mean that it is ambiguous." *Id.* at 560 (quoting *Mid Rivers Mall,* 37 S.W.3d at 256). "Plain language forecloses speculation about intent of the parties." *Id.* (quoting *Slankard v. Thomas,* 912 S.W.2d 619, 624 (Mo. App. S.D. 1995)). "The intent of the parties . . . is governed by the language used in the release." *Slankard*, 912 S.W.2d at 624.

The General Release and Waiver signed by Appellant states, in relevant part:

[T]he undersigned hereby unconditionally RELEASES, DISCHARGES, and ACQUITS PCMH and all its present, former, and future boards of trustees, officers, directors, employees, agents, attorneys, divisions, subsidiaries, predecessors, successors, insurers, related companies, shareholders, partners, and members of all of them ("Released Parties"), from and against any and all claims, charges, causes

of action, or liabilities that [Appellant] has or may have against the Released Parties.

Appellant argues this release language does not include Respondents because Appellant did not specifically name Respondents in the release and Appellant did not intend to release them.[2] Respondents argue the release includes them because they are "members" of a "related company," the Clinic, and are "agents" of the Health System and Hospital.

*Related Companies*

The General Release and Waiver bars claims against "members" of "related companies." Regarding whether Respondents are "members" of a related company, Appellant conceded in his statement of additional material facts that Respondents are physicians and "members" of the Clinic, and Respondents admitted this material fact.

The question thus becomes whether the Clinic is a "related company" to the Hospital. Appellant asserts the phrase "related companies" is ambiguous. "To determine whether a contract is ambiguous, this Court considers the whole document and, absent any definition within the contract, gives the words in the contract their natural and ordinary meaning." *STL Riverview Plaza LLC v. Metro. St. Louis Sewer Dist.*, 681 S.W.3d 290, 301 (Mo. App. E.D. 2023).

Here, the release does not define the phrase "related companies," and we must give it its natural and ordinary meaning. "Related" is defined as "having relationship: connected by reason of an established or discoverable relation." *Related*, WEBSTER'S THIRD NEW INTERNATIONAL

---

[2] Respondents argue the General Release and Waiver is a general release that necessarily includes Respondents. Appellant characterizes the release as a specific release, the scope of which "is limited to entities/individuals precisely, clearly, and unequivocally identified on its face." Regardless, we may determine who is included in the release by interpreting its plain and unambiguous language and considering the undisputed material facts in the summary judgment record. *See Holmes*, 395 S.W.3d at 559–60; *Monsanto Co. v. Syngenta Seeds, Inc.*, 226 S.W.3d 227, 232–33, 233 n. 13 (Mo. App. E.D. 2007).

DICTIONARY (1967). "Company" is defined as "an association of persons for carrying on a commercial or industrial enterprise or business." *Company*, *id.* Taking these two definitions together, a "related company" is an association of persons for carrying on a commercial enterprise or business connected by reason of an established or discoverable relation. Though apparently intentionally broad, the phrase "related companies" is not ambiguous.[3] *See STL Riverview Plaza*, 681 S.W.3d at 301; *Holmes*, 395 S.W.3d at 559-60.

In the context of the General Release and Waiver viewed as a whole, a "related company" to the Hospital is an association of people carrying on a commercial business through an established or discoverable relation to the Hospital. To determine whether the Clinic is a "related company" to the Hospital pursuant to this definition, we return to the summary judgment record.

Appellant alleged in his statement of additional material facts, "The PSA Agreement states it is made and entered into 'by and between PERRY COUNTY HEALTH SYSTEM, D/B/A PERRY COUNTY MEMORIAL HOSPITAL, a Missouri not for profit corporation ("Hospital"), and PERRYVILLE FAMILY CARE CLINIC, P.C., a Missouri professional corporation ("PFCC").'" Respondents readily admitted these material facts, rendering uncontroverted the contractual relationship between the Health System, doing business as the Hospital, and the Clinic, a company, of which Respondents are members.

Further, in their own statement of uncontroverted material facts, Respondents stated:

---

[3] Appellant points to his own affidavit averring he did not intend to release Respondents because his understanding was that Respondents were not covered under the release. He also refers us to a proposed version of the separation agreement he rejected, which included the Health System, to demonstrate that he did not intend to release Respondents. These exhibits are improper parol evidence of Appellant's alleged intent. *See STL Riverview Plaza*, 681 S.W.3d at 299. Because Appellant does not claim fraud, accident, mistake, or duress, and the language of the General Release and Waiver is unambiguous, we will not consider parol evidence that causes "the writing to be varied or contradicted." *Id.* (quoting *Pecos I, LLC v. Meyer*, 655 S.W.3d 579, 588 (Mo. App. E.D. 2022)); *see also Holmes*, 395 S.W.3d at 559.

13. The PSA Agreement provides that PFCC is to be the exclusive family medicine provider for the Hospital, enabling the Hospital to operate a full-time family medicine practice.
14. Under the PSA Agreement, the Hospital agreed to provide nursing staff, administrative staff, equipment, and any other necessary supplies. The Hospital also agreed to be responsible for maintenance of the practice facilities.
15. In addition, the Hospital has the authority to determine the hours of service required from PFCC physicians, and requires that all physicians be in good standing with PCMH.
16. A web search for "Perry County Memorial Hospital" leads to the Hospital website, where a patient can search for providers from all clinics or entities falling under the Hospital's umbrella.
17. Defendants' contact information is easily found on the website.
18. Aside from a few hospice directorships, PFCC's sole source of income is from the Hospital.
19. PFCC uses Hospital space, staff, and equipment. All operational practice expenses are paid by the Hospital.
20. Prior to 2022, every piece of mail received from PFCC contained a notation stating "Perryville Family Care Clinic, a division of Perry County Health System." From 2022 through the present, the notation "a service of Perry County Health System" appears. PFCC billing statements do not identify PFCC, only "Perry County Health System."

(internal citations omitted).

Appellant admitted, in response to statements 17 and 20, that Respondents' contact information is easily found on the Hospital website, and the Clinic's mail and billing statements identify the Clinic as the Health System.

Appellant denied statements 13, 14, 15, 16, 18, and 19 on the basis that "Perry County Memorial Hospital and Perry County Health System are separate entities." Appellant's denials specifically acknowledged, however, that "PFCC has a PSA Agreement with Perry County Health System, not Perry County Memorial Hospital" and, thus, that the Clinic and the Health System have a contractual relationship under the PSA Agreement.[4]

---

[4] The PSA Agreement also specifically identifies Respondent Schabbing as a "member[] in good standing of the Medical Staff of HOSPITAL." We note that the plain and unambiguous language of the General Release and Waiver also releases members of the Hospital.

9

Despite Appellant's denials, the plain terms of the PSA Agreement, set out in Respondents' statements 13, 14, and 15 and in the PSA Agreement attached as Defendant's Exhibit 6, establish a relationship between the Hospital and the Clinic. For example, the Clinic was to be the exclusive family medicine provider for the Hospital, and the Hospital had the authority to determine the hours of service required of the Clinic physicians and that all physicians are in good standing with the Hospital. In his denials, Appellant insisted that the Health System and the Hospital are separate entities and the PSA Agreement was with the Health System, but those denials were not supported with specific references to any exhibit supporting a denial of the terms of the PSA Agreement. Instead, Appellant cited Defendant's Exhibit 6, the PSA Agreement itself, and Plaintiff's Exhibit D, the Perry County Memorial Hospital's one-page registration of the fictitious name "Perry County Memorial Hospital" with the Missouri Secretary of State.

"A denial may not rest upon the mere allegations or denials of the party's pleading. Rather, the response shall support each denial with specific references to the discovery, exhibits or affidavits that demonstrate specific facts showing that there is a genuine issue for trial." Rule 74.04(c)(2). "A response that does not comply with this Rule 74.04(c)(2) with respect to any numbered paragraph in movant's statement is an admission of the truth of that numbered paragraph." *Id.*

Respondents additionally alleged in their statement of facts:

21. Over the years, Drs. Green and Schabbing have served the Hospital in numerous ways, and have held a number of appointments.
22. Dr. Green [h]as held the following positions with the Hospital:
   - Physician Director of Emergency Room (2021-2023)
   - Physician Director of Respiratory Care (2021-2023)
   - Chief of Staff (2019-2021)
   - Vice Chief of Staff/Secretary (2017-2019)
   - Physician Director of Home Health (2011-2013, 2013-2015, 2015-2017, 2017-2019),
   - Physician Director of Newborn and Nursery (2013-2015, 2015-2017),

10

- Physician Director of Emergency Room (2011-2013, 2013-2015), and
- Physician Director of Cardiopulmonary Rehab (2009-2011).

23. Dr. Schabbing has held the following positions with the Hospital:
- Physician Director of Utilization Management, Medical Audit, and Medical Records (1999-2001, 2005-2007, 2019-2021, 2021-2023)
- Physician Director of Cardiopulmonary Rehab (2005-2007, 2011-2013, 2013-2015, 2015-2017, 2017-2019)
- Physician Director of Performance Improvement/Risk Management (2003-2005, 2013-2015, 2015-2017)
- Physician Director of Pharmacy and Therapeutics (2001-2003, 2011-2013)
- Physician Director of Newborn and Nursery (1999-2001, 2011-2013)
- Physician Director of Emergency Room (2007-2009, 2009-2011)
- Physician Director of Home Health (2009-2011)
- Physician Director of Clinical Pathology (2007-2009)
- Physician Director of Arthritis Rehab (2005-2007)
- Chief of Staff (2003-2005)
- Medical Executive Committee Secretary (2001-2003)
- Physician Director of Rural Health Clinic (1999-2001)
- Physician Director of Rural Health Clinic I, Perryville Family Care Clinic (2014-2023).

. . . .

25. The Chief of Staff has decision-making authority over the Hospital medical staff, along with significant decision-making power.

26. The Chief of Staff runs medical staff meetings, can direct the medical staff, and develops and implements policies relevant to the medical staff. The Chief of Staff has decisionmaking authority over credentialing and approval of physicians and medical staff.

(internal citations omitted).

In response to Respondents' statements 21, 22, 23, 25, and 26, Appellant maintained his denial that the Hospital and the Health System are separate entities, but repeatedly acknowledged "the Health System governs/operates the hospital . . . and the medical staff and other appointments are administered through the Health System, not PCMH." In another response, Appellant "admits that Perry County Memorial Hospital is operated by Perry County Health System via contract." In his own statement of additional material facts, Appellant maintained, "The Health System governs/operates the Hospital," and Respondents duly admitted that material fact. Appellant's admission that the Health System governs/operates the Hospital demonstrates a relationship between the Hospital and the Health System.

11

On this record, the uncontroverted facts are that Respondents are members of the Clinic. The Clinic is a company, a professional corporation. The Clinic and the Health System, which does business as the Hospital and governs/operates the Hospital, are engaged in a contractual relationship pursuant to the PSA Agreement. According to the PSA Agreement, the Clinic is the exclusive family medicine provider for the Hospital, and the Hospital, among other things, has the authority to determine the hours of service required of the Clinic physicians and that all physicians are in good standing with the Hospital. Accordingly, the Clinic is a related company to the Hospital.[5]

There is no genuine issue of material fact that Respondents are members of a related company to the Hospital and, therefore, are included in the General Release and Waiver. We therefore need not consider Respondents' secondary argument that they are also agents of the Hospital for purposes of the General Release and Waiver.

## Conclusion

Respondents are members of a related company to the Hospital. Therefore, the General Release and Waiver unconditionally releases them "from and against any and all claims, charges, causes of action, or liabilities" Appellant may have against them. Respondents are entitled to judgment as a matter of law, having established "there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense." *ITT Com. Fin. Corp.*, 854 S.W.2d at 381. Appellant's point is denied.

We affirm the summary judgment of the trial court.

---

[5] Also not lost on us is that the gravamen of Appellant's tortious interference claim is that Respondents, *by their relation to the Hospital*, caused the Hospital to breach its contract with Appellant and Appellant's business expectancy with the Hospital.

12

_____
Cristian M. Stevens, J.

James M. Dowd, P.J., and
Angela T. Quigless, J., concur.

13