The ESTATE OF John R. GIVENS, Margaret R. Givens, Personal Representative, Plaintiff/Appellant,

v.

U.S. NATIONAL BANK OF CLAYTON, Defendant/Respondent.

No. 69725.

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 18, 1997.

Curtis, Oetting, Heinz, Garrett & Soule, P.C., David P. Oetting, Kenneth J. Heinz, St. Louis, for plaintiff/appellant.

The Stolar Partnership, E. Michael Murphy, Henry F. Luepke, St. Louis, for defendant/respondent.

PUDLOWSKI, Judge.

John Givens (Givens), as president and director of U.S. National Bank of Clayton (Bank), was sued by the Office of Comptroller of Currency (OCC) for violating federal banking laws. On October 31, 1990, the Bank's Board of Directors (Board) passed a resolution agreeing to indemnify Givens for legal fees incurred in his defense of the OCC's action. On November 8, 1990, the Board dismissed Givens as president and director. In exchange for severance benefits, Givens signed a general release. When the Bank later refused to indemnify Givens for legal fees incurred in the OCC's action, he brought suit against the Bank. The trial court found for the Bank, holding the general release relieved the Bank of its agreement to pay Givens' attorneys' fees. We affirm.

## I. Background

From 1988 until late 1990 Givens was president and chief executive officer of the Bank. Under federal banking law Givens was required, as the Bank's president, to also be a director. In October 1990 the OCC notified the Bank it was initiating proceedings against the directors and executive officers of the Bank for violating various federal banking laws. On October 31, 1990, the Board passed a resolution pledging to indemnify Givens and other directors for legal fees they incurred in defense of the OCC's proceedings. On November 6, 1990, the Board voted to offer Givens the opportunity to resign or, if he refused, to fire him. In return for a severance package from the Bank, Givens signed a release on November 8 and resigned as president and as a director of the Bank the following day.

The OCC pursued its investigation of Givens. During the course of the investigation, Givens incurred attorneys' fees totaling over $120,000. Before the OCC could render a final judgment on Givens' actions, Givens died in a car accident in January 1993. Within a month after Givens' death, the OCC dismissed the action against Givens, citing his death as its reason. Givens' estate, by and through his personal representative, demanded the Bank pay for legal fees Givens incurred during the OCC's proceedings. The Bank refused. Givens' estate then brought this suit against the Bank seeking reimbursement for his legal fees.

The parties submitted a series of stipulated facts to the trial court. Based upon these facts, the trial court found the release executed by Givens was unambiguous and relieved the Bank of its obligation to pay Givens' attorneys' fees. From this ruling, Givens appeals.

On appeal Givens raises two points. First, the release contains a latent ambiguity and, as such, the trial court erred in refusing to allow extrinsic evidence to disclose the parties' intent when signing the release. Second, Givens was entitled to reimbursement for attorneys' fees under Missouri law. We will address each of these in turn.

## II. Standard of Review

When reviewing a court-tried case, the appellate court "shall review the case upon both the law and the evidence as in suits of an equitable nature." Rule 73.01(c). In reviewing the facts where the record is stipulated but not all of the ultimate facts or factual inferences have been conceded, this court

reviews the stipulated facts in the light most favorable to the respondent and disregards inferences favorable to the appellant. *Graue v. Mo. Property Ins. Placement*, 847 S.W.2d 779, 782 (Mo. banc 1993). "Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Finally, "a bench tried judgment which reaches the correct result will not be set aside even if the trial court gives a wrong or insufficient reason for its judgment." *Graue*, 847 S.W.2d at 782. With these guidelines in mind, we now turn to Givens' appeal.

### III. Givens' Appeal

A. *Whether the release constituted an unambiguous, general release and thus relieved the Bank of its pledge to pay Givens' attorneys' fees.*

■ Givens'[1] first point on appeal deals with the release signed on November 8, 1990:

### Release

In consideration of the agreement of U.S. National Bank of Clayton to pay me a severance benefit equal to my last base salary[2] with the Bank pro rated from the date of my termination, November 8, 1990, through January 9, 1991, which I understand and acknowledge that the Bank is not required to pay, I hereby release and agree to hold harmless U.S. National Bank of Clayton, its officers, directors and shareholders, and their respective successors, heirs and assigns, from any and all liability, actions, causes of action, claims, demands and damages, whether or not now known or contemplated, of whatever name or nature, in any manner arisen, arising or to arise form [sic] or in connection with, directly or indirectly, my hiring, employment and dismissal by U.S. Nation-

al Bank of Clayton and any other matter whatsoever involving my relationship with U.S. National Bank of Clayton, its officers, directors or shareholders.

Dated: November 8, 1990

/s/ John R. Givens

In the first point on appeal, Givens argues two subpoints. First, the use of the word "relationship" is ambiguous in that it could have meant any one of the relationships he had with the bank; i.e. president, director, shareholder or depositor. Because of this ambiguity, Givens argues, extrinsic evidence should have been permitted to show which relationship Givens intended when he signed the release. Second, Givens argues the release actually relates first, with a specific issue (those "arising or to arise from or in connection with, directly or indirectly, my hiring, employment and dismissal by [the Bank]") and, secondly with a general issue ("and any other matter whatsoever involving my relationship with [the Bank], its officers, directors or shareholders"). Citing an extensive list of Missouri cases, Givens argues the general issue is limited by the specific issue. We will address the former point first.

"In construing a release, as with any contract, the intention of the parties governs and any question concerning the scope and extent of the release is said to be determined by what may fairly be said to be in the parties' contemplation, which in turn is resolved in the light of all the surrounding facts and circumstances under which the parties acted." [Cites omitted]. *Slankard v. Thomas*, 912 S.W.2d 619 (Mo.App. S.D.1995). "The intent of the parties, however, is governed by the language used in the release. [Cites omitted]. Plain language forecloses speculation about intent of the parties. [Cite omitted]." *Id.* And "[t]he mere fact the parties disagree upon the interpretation of a document does not render it ambiguous." *Boat-*

---

1. This appeal is brought by Givens' estate by and through his personal representative. For the sake of brevity, we shall refer to Givens' estate as "Givens," recognizing the estate has standing to bring this cause of action to the extent Givens himself did. By this manner we do not intend any disrespect to the Givens' family.

2. The release contained an asterisk noting that the base salary included "fringe benefits." Neither side argues reimbursement for attorneys' fees was a "fringe benefit," and as such we do not address this.

*men's Trust Co. v. Sugden,* 827 S.W.2d 249, 254 (Mo.App. E.D.1992).

Givens argues the release is ambiguous in using the word "relationship," since it could have meant either his presidency, his directorship, or any of his other relationships with the Bank. Givens has attempted to draw a distinction between the relationship he had as president of the Bank and his relationship as a director of the Bank. However, looking at the stipulated facts of this case, we do not believe a distinction exists between Givens' relationship as president and his relationship as a director. Under federal banking laws and according to the Bank's Articles of Association, Givens was required to be a director of the Bank because he was the Bank's president. When Givens resigned, he agreed to resign not only as president but also as a director. In return for severance pay, Givens signed the release and resigned as both president and as a director. Based upon these facts we cannot say the trial court's determination that the term "relationship" was unambiguous, nor its determination that the release itself was unambiguous, was contrary to the weight of the evidence. The extrinsic evidence was properly excluded. "Where there is no ambiguity in the contract, the intention of the parties is to be gathered from it and it alone.... It is only where the contract is ambiguous and not clear that resort to extrinsic evidence is proper." *Peterson v. Continental Boiler Works, Inc.,* 783 S.W.2d 896, 901 (Mo. banc 1990).

■ Because we find that there is no ambiguity, we review the terms of the release to see if it is a general release. In the second subpart of his first point on appeal, Givens argues the release is not a general release because the language which is general in nature is limited by the specific language contained before it. In other words, Givens argues the specific language which deals only with his relationship to the Bank limits the general language contained later which relieves the Bank of any and all liability for any other matters. However, because we affirmed the trial court's opinion that the release was unambiguous, Givens' distinction between specific and general language is illu-sory. Therefore, we must determine whether the trial court's decision that the release was a general release was contrary to the weight of the evidence.

After a review of the evidence we find the trial court's decision is not contrary to the weight of the evidence. The release uses phrases which have been recognized by this court to be general in nature: "from any and all liability," "of whatever name or nature" and "and any other matter whatsoever involving my relationship with [the Bank]." These are phrases which have been recognized by this court to release all claims a party may have. *See State ex rel. Stutz v. Campbell,* 602 S.W.2d 874 (Mo.App.1980); *Angoff v. Mersman,* 917 S.W.2d 207 (Mo. App.1996).

■ Even if we assume Givens' argument that a distinction exists between his relationship as president and as a director is true, we believe the release would still relieve the Bank of its obligation to pay for Givens' attorneys' fees. Accepting, *arguendo,* the term "relationship" means "presidency," at the very least one must say Givens' directorship came about as an indirect—if not direct—result of his presidency. Recalling it is undisputed Givens had to become a director when he became the Bank's president and that he had to submit his resignation as both president and as a director, Givens' directorship clearly "arose [from] or was in connection with, directly or indirectly," his hiring, employment and dismissal as president. It is undisputed that the release specifically discharges any obligations the Bank owed Givens for anything arising out of his hiring, employment and dismissal from the Bank. This would reasonably include the attorneys' fees.

We conclude the trial court's decision that the terms of the release are unambiguous is not against the weight of the evidence. The trial court properly excluded extrinsic evidence. We further find the trial court did not err in holding the release was a general release and thus the language relieved the Bank of any obligation to pay for Givens' attorneys' fees. Point one is denied.

In his second point on appeal, Givens argues he is entitled to indemnity as a matter of Missouri law. He relies on § 351.355(3) RSMo 1994 which reads:

> To the extent that a director, officer, employee or agent of the corporation has been successful on the merits or otherwise in defense of any action, suit, or proceeding referred to in subsections 1 and 2 of this section, or in defense of any claim, issue or matter therein, he shall be indemnified against expenses, including attorneys' fees, actually and reasonably incurred by him in connection with the action, suit, or proceeding.

Under other factual circumstances such argument may be valid, however, we recognize that when a general release is executed and there has not been an express reservation of right—even a statutory right to indemnity—a party has waived this right. *See Lancaster v. Buerkle Buick Honda Co.,* 809 F.2d 539 (8th Cir.1987)(permitting release of statutory employment claims when a general release is signed); *see also Morris v. Union Pacific Railroad Co.,* 825 S.W.2d 911 (Mo.App.1992)(general release which discharged one statutory claim was broad enough to include other, separate statutory claim). "In the absence of words in the operative part of a general release which indicate an intention to limit its effect, it must be concluded that the instrument was contemplated and intended to be a complete settlement of all matters between the parties." *Sexton v. First Nat'l Mercantile Bank and Trust Co.,* 713 S.W.2d 30, 31 (Mo.App. 1986). Givens' second point is denied.

The judgment of the trial court is affirmed.

CRANE, P.J., and GERALD M. SMITH, J., concur.