2006 UT App 46

**UTAH TRANSIT AUTHORITY, Plaintiff and Appellee,**

v.

**SALT LAKE CITY SOUTHERN RAILROAD COMPANY, INC., Defendant and Appellant.**

**No. 20050303–CA.**

Court of Appeals of Utah.

Feb. 16, 2006.

E. Scott Savage and Casey K. McGarvey, Berman & Savage, Salt Lake City, for Appellant.

Alan L. Sullivan, Todd M. Shaughnessy, and Angela Stander, Snell & Wilmer, Salt Lake City, for Appellee.

Before Judges BENCH, DAVIS, and McHUGH.

## OPINION

BENCH, Presiding Judge:

¶ 1 Appellant Salt Lake City Southern Railroad Company, Inc. (Southern) appeals the trial court's grant of summary judgment ordering Southern to indemnify Appellee Utah Transit Authority (UTA) for litigation expenses UTA incurred as a result of the Goebel litigation,[1] a prior personal injury case. We affirm.

## BACKGROUND

¶ 2 Union Pacific Railroad Company (Union Pacific) previously owned tracks at a railroad crossing at 1700 South near 200 West, where Edward Goebel was injured. In 1992, Union Pacific sold the tracks to UTA, which planned to use them for light-rail passenger service. Union Pacific retained a limited easement for freight service on the tracks and transferred this interest to Southern. In 1993, Southern and UTA entered into an Administration and Coordination Agreement (the Agreement). The Agreement established certain rights and obligations between Southern and UTA concerning the use, maintenance, and operation of

---

1. For purposes of this opinion, the "Goebel litigation" refers to both the action filed in the district court by Edward and Kathy Goebel, and the subsequent appeal. *See Goebel v. Salt Lake City S. R.R. Co.,* 2004 UT 80, 104 P.3d 1185.

the tracks and the allocation of liability between the parties.

¶ 3 In February 1998, while riding his bicycle, Goebel sustained serious injuries at the railroad crossing. Goebel alleged that his injuries were due to faulty installation and maintenance of rubber panels adjacent to the railroad tracks, which caused the front wheel of his bicycle to stop abruptly when it became wedged between the panels. Goebel filed suit for damages against Southern, Salt Lake City Corporation (the City), UTA, and others. Goebel settled before trial with all of the defendants except Southern and the City. After trial, the court granted in part a directed verdict in favor of Southern.[2]

¶ 4 UTA sought indemnification from Southern, pursuant to the Agreement, for UTA's litigation expenses and the amount it paid for settlement of the Goebel litigation. Southern and UTA disagreed as to whether the Agreement provided for indemnification of the Goebel litigation expenses and settlement. UTA filed suit, Southern filed a counterclaim against UTA for indemnification of its litigation expenses incurred in the Goebel litigation, and both parties moved for summary judgment. The trial court granted summary judgment in favor of UTA, ruling that Southern indemnify UTA pursuant to the Agreement. As a result, the trial court awarded judgment in favor of UTA in the amount of $238,190.69 plus interest.

¶ 5 Southern now appeals the trial court's grant of UTA's motion for summary judgment and the denial of Southern's motion for summary judgment.

## ISSUES AND STANDARDS OF REVIEW

¶ 6 Southern argues that the trial court erred, as a matter of law, in granting UTA summary judgment. Southern asserts that the court incorrectly interpreted the Agreement by ruling that the Agreement required Southern to indemnify UTA for its litigation expenses and settlement costs.

¶ 7 Summary judgment is available whenever there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Utah R. Civ. P. 56(c). "Since the parties are in agreement as to the material facts, our review of the summary judgment is limited to determining 'whether the trial court erred in applying the governing law.'" *Village Inn Apts. v. State Farm Fire & Cas. Co.,* 790 P.2d 581, 582 (Utah Ct.App.1990) (citation omitted). "We give a trial court's decision to grant summary judgment no deference and review it for correctness." *Butler, Crockett & Walsh Dev. Corp. v. Pinecrest Pipeline Operating Co.,* 2004 UT 67, ¶ 19, 98 P.3d 1 (citation and quotations omitted). Further, "[w]e review questions of contract interpretation as questions of law." *Foster v. Montgomery,* 2003 UT App 405, ¶ 20, 82 P.3d 191.

## ANALYSIS

■ ■ ¶ 8 "When interpreting a contract, a court first looks to the contract's four corners to determine the parties' intentions, which are controlling." *Bakowski v. Mountain States Steel, Inc.,* 2002 UT 62, ¶ 16, 52 P.3d 1179. "A trial court must first attempt to harmonize all of the contract's provisions and all of its terms' [sic] when determining whether the plain language of the contract is ambiguous." *Gillmor v. Macey,* 2005 UT App 351, ¶ 19, 121 P.3d 57 (citation and quotations omitted), *cert. denied,* 126 P.3d 772. "An ambiguity exists where the language is reasonably capable of being understood in more than one sense." *Dixon v. Pro Image, Inc.,* 1999 UT 89, ¶ 14, 987 P.2d 48 (citation and quotations omitted). "If the language within the four corners of the contract is unambiguous, then a court does not resort to extrinsic evidence of the contract's meaning, and a court determines the parties' intentions from the plain meaning of the contractual language as a matter of law." *Bakowski,* 2002 UT 62 at ¶ 16, 52 P.3d 1179. Additionally, "[w]e will not make a better contract for the parties than they have made for themselves. Nor will we avoid the contract's plain language to achieve an 'equitable' result." *Id.* at ¶ 19 (citations omitted).

---

**2.** Goebel appealed the trial court's decision, and the Utah Supreme Court affirmed the entry of a directed verdict in favor of Southern. *See Goebel* *v. Salt Lake City S. R.R. Co.,* 2004 UT 80, ¶ 28, 104 P.3d 1185.

■ ¶ 9 Section 3.3 of the Agreement states, in pertinent part, that

> [Southern] shall be responsible for and shall pay the costs of the maintenance, repair, and renewal of the Joint Trackage and shall maintain, repair and renew the same to the standards it deems necessary for Freight Rail Service; . . . . Nothing herein shall relieve [Southern] of the obligation to perform maintenance, repair and renewal on the Joint Trackage . . . in compliance with all applicable laws and regulations.

Both Southern and UTA concede that Goebel's injuries occurred on "Joint Trackage."[3] Based on the plain language of the Agreement, Southern is responsible for the maintenance and repair of Joint Trackage and for ensuring the Joint Trackage is "in compliance with all applicable laws and regulations." Southern's responsibility for maintenance and repair of the Joint Trackage continues until UTA provides, pursuant to section 3.4 of the Agreement, "written notice to [Southern] at any time, but at least sixty (60) days prior to commencement of Passenger Service." At that time, "UTA shall undertake and assume all costs of maintenance, repair and renewal of the Joint Trackage." At the time of Goebel's injuries, UTA had not provided Southern any written notice pursuant to section 3.4 of the Agreement and did not commence passenger service on the tracks until December 1999, nearly two years after Goebel's injuries. As a result, Southern was solely responsible for maintenance and repair of all Joint Trackage at the time of Goebel's injuries.

¶ 10 Section 7.2(a) of the Agreement describes the allocation of liability between the parties and specifically provides that "[w]hen such Loss or Damage results from or arises in connection with the maintenance, construction, operations or other acts or omissions of only one of the parties, . . . such Loss or Damage shall be borne by that party." Based on the plain language of this section, the "Loss or Damage" incurred as a result of the Goebel injuries and litigation is to be borne by Southern.

¶ 11 The Agreement also provides for indemnification. Section 7.3 of the Agreement specifically states that each party "will pay for all Loss or Damage the risk of which it has herein assumed, the judgment of any court to the contrary and otherwise applicable law regarding liability notwithstanding, and will forever indemnify, protect, defend and hold harmless the other party, its successors and assigns, from such payment." As a result, Southern, as the responsible party, must indemnify UTA for any and all "Loss or Damage," which includes "all costs, liabilities, judgments, fines, fees (including without limitation reasonable attorneys' fees and disbursements) and expenses (including without limitation defense expenses) of any nature arising from or in connection with death of or injury to persons."

■ ¶ 12 Southern urges an alternate interpretation of the Agreement. It argues that it cannot be responsible for Goebel's injuries because maintenance of the track for the safety of bicyclists is "not necessary for Freight Rail Service" and that it is contractually barred from doing anything "not necessary for Freight Rail Service." The "alternate interpretation 'must be plausible and reasonable in light of the language used.' " *Saleh v. Farmers Ins. Exch.*, 2006 UT 1, ¶ 17 (citation omitted). "[T]o merit consideration as an interpretation that creates an ambiguity, the alternative rendition 'must be based upon the usual and natural meaning of the language used and may not be the result of a forced or strained construction.' " *Id.* (citation omitted). Southern's proposed alternate interpretation of the Agreement is neither plausible nor reasonable.

¶ 13 First, Southern seeks a forced and strained interpretation of section 3.3 of the Agreement to exclude *any* public involvement or interaction with its tracks as being "necessary for Freight Rail Service." Maneuvering and mediating tracks through and across public streets is necessary to transport freight in and out of the city across

---

**3.** The Agreement identifies three different types of railroad trackage: Passenger Trackage, Freight Trackage, and Joint Trackage (referring to railroad tracks used by both the passenger and freight services).

these railroad lines. Maintaining the crossings for the safety of the public is, therefore, "necessary for Freight Rail Service."

¶ 14 Second, section 3.3 of the Agreement requires that Southern maintain and repair the track "in compliance with all applicable laws and regulations," including Utah premise liability laws. *See* Utah Code Ann. § 56–1–11 (2000) ("Every railroad company shall be liable for damages caused by its neglect to make and maintain good and sufficient crossings at points where any line of travel crosses its road."); Salt Lake City, Utah, Code § 14.44.030 (1987) (requiring every railway company to keep portions of streets across which their tracks "are constructed and maintained in good and safe condition" for public travel).

¶ 15 Third, when read in harmony with its other provisions, the Agreement provides that UTA is responsible for the Passenger Trackage, and that Southern is responsible for the Freight Trackage. As for Joint Trackage, Southern is solely responsible until UTA gives written notice or commences passenger service on the Joint Trackage. It is undisputed that, at the time of Goebel's injuries, notice had not been given and passenger service had not yet commenced. Southern was therefore solely responsible for the maintenance of the tracks.

¶ 16 Southern also argues that after the Agreement was entered into by the parties, UTA controlled the "sufficiency and safety of the crossing surface ... for its use by bicyclists" and is therefore responsible for the maintenance of the track. As no ambiguity exists in the Agreement, we do not consider this argument in interpreting the Agreement because it constitutes extrinsic evidence. *See View Condo. Owners Ass'n v. MSICO, L.L.C.*, 2005 UT 91, ¶ 21, 127 P.3d 697 ("[The court] may resort to extrinsic evidence as an aid to construction *only* where there is an ambiguity." (emphasis added)).

## CONCLUSION

¶ 17 Based on the plain language of the Agreement, Southern was solely responsible for the maintenance and repair of the Joint Trackage at the time of Goebel injuries. As a result, Southern is contractually obligated to solely bear the "Loss or Damage" UTA incurred in the Goebel litigation. Southern must therefore indemnify UTA for its expenses, attorney fees, and settlement costs.

¶ 18 Accordingly, we affirm.

¶ 19 WE CONCUR: JAMES Z. DAVIS and CAROLYN B. McHUGH, Judges.