2008 UT App 69

**LARRY J. COET CHEVROLET, Pontiac, Buick, Inc., Plaintiff and Appellant,**

v.

**Danny R. LABRUM, individually; Labrum Chevrolet, Pontiac, Buick, Inc.; and Ronald L. Covey, individually and as personal guarantor, Defendants and Appellees.**

No. 20070005–CA.

Court of Appeals of Utah.

March 6, 2008.

Gary R. Howe and Thomas B. Price, Salt Lake City, for Appellant.

Keith A. Call, Salt Lake City, for Appellees.

Before GREENWOOD, P.J., THORNE, Associate P.J., and McHUGH, J.

OPINION

GREENWOOD, Presiding Judge:

¶1 In this case involving the sale of an automobile dealership, Larry J. Coet Chevrolet, Pontiac, Buick, Inc. (Coet), appeals the trial court's grant of partial summary judgment in favor of Danny R. Labrum, individually, and Labrum Chevrolet, Pontiac, Buick, Inc. (collectively, Labrum). Coet argues that the trial court erred in granting Labrum's motion for partial summary judgment because Coet did not waive its right to attorney fees and prejudgment interest as part of a partial settlement between the parties. Coet also argues that the trial court erred in concluding that Labrum was the prevailing party after trial on the parties' remaining claims and in awarding Labrum attorney fees and prejudgment interest based on that conclusion. Finally, Coet claims that the trial court erred in finding that Coet was liable to Labrum for obsolete parts and that a 1992 Ford truck was included in the used vehicles purchased by Labrum. We affirm.

BACKGROUND

¶2 In August 2001, Coet and Labrum executed an Asset Sale Agreement, whereby Labrum agreed to purchase Coet's car dealership in Heber, Utah. The purchase included, inter alia, new vehicle inventory, used vehicle inventory, and parts.[1] Prior to closing on the sale, disputes arose between Coet and Labrum and on November 13, 2001, Coet filed suit against Labrum, alleging that Labrum had not abided by the terms of the Asset Sale Agreement and that Labrum had not paid for a 1992 Ford truck included in the used car inventory. Coet also sought attorney fees and costs pursuant to the Asset Sale Agreement.[2] Labrum counter claimed, asserting, inter alia, a claim for fraud and misrepresentation regarding a statement Coet made about obsolete parts.

¶3 Notwithstanding the lawsuit, the parties formally closed on the transaction on November 14, 2001. Almost two years later, after attempts to negotiate the lawsuit had failed, the parties agreed to submit certain claims to an accountant evaluation team (the Accounting Team). The trial court acknowledged this agreement in a Stipulated Case Management Order, which stated, in part, "*Submission of Accounting Disputes to Accounting Evaluation Team.* The parties shall submit all of the accounting disputes, including all accounting issues raised as part of the claims or counterclaims in this lawsuit, to an accounting evaluation team, consistent with the terms of the parties' letter agreement...." The specific terms of the agreement to submit issues to the Accounting Team were memorialized in a letter dated February 9, 2005, (Letter of Understanding), executed on behalf of both parties.

¶4 In accordance with the Letter of Understanding, the Accounting Team settled the majority of the accounting claims. After calculating various sums each party owed to the other, the team found that Labrum owed Coet $59,384.79, which Labrum promptly paid. The Accounting Team was unable to reach a unanimous conclusion on the value of obsolete parts, how to characterize a $9000 payment, Coet's claim for $4300 for a 1992

---

1. The Asset Sale Agreement defines used vehicle inventory and parts as follows: "Used Vehicle Inventory" means "[a]ll used motor vehicles which are in the Seller's inventory at the time of Closing which vehicles have been previously titled...." "Parts" are "motor vehicle parts and accessories inventory ... of the Seller established by physical count as of the Closing, *excluding* any and all obsolete parts." And, "Obsolete Parts" are defined as:

 (1) any part which is not included in the subject manufacturer's current parts pricing list; (2) any part on which the seal has been opened or is materially damaged in any way; (3) any part which is missing a portion or portions of its working mechanism(s) so that it would not be accepted for return by its manufacturer; or (4)[p]arts in excess of a one hundred eighty (180) day supply.

2. The Asset Sale Agreement contains the following attorney fees provision:

 In the event any action or proceeding is taken or brought by either party concerning this Agreement, the prevailing party shall be entitled to recover its costs and reasonable attorneys' fees, whether such sums are expended with or without suit, at trial, on appeal or in any bankruptcy or insolvency proceeding.

Ford truck, and Coet's claim for payment for oil and gas inventory. The $9000 claim was dismissed; however, pursuant to the Stipulated Case Management Order, the remaining claims proceeded to trial. The following circumstances gave rise to the 1992 Ford truck and the obsolete parts disputes.

### The 1992 Ford Truck

¶ 5 Approximately one week before closing, Gary Robinson purchased a new Chevrolet truck from Coet. As part of the purchase, Robinson agreed to trade in his 1991 Chevrolet pickup. However, Robinson's friend, Johnny Jessen, who owned a 1992 Ford pickup, wanted Robinson's 1991 Chevrolet. After some discussion, the parties agreed that Robinson would buy the new Chevrolet truck, Jessen would take Robinson's 1991 Chevrolet pickup, and Coet would take Jessen's 1992 Ford truck as a trade in on Robinson's purchase. On that same day, Robinson drove away in the new Chevrolet and left his 1991 Chevrolet truck at the dealership. Robinson owed a credit union approximately $2300 on the 1991 truck.

¶ 6 On November 13, 2001, Jessen delivered his 1992 Ford truck to Coet and took possession of the 1991 Chevrolet. On December 12, Coet paid $2300 to the credit union with the lien on the 1991 Chevrolet; a notation on the business record states, "Gary Robinson Pay off." A few months later, Labrum sold the 1992 vehicle. Although the 1992 Ford truck was included in the used car inventory at closing, Coet alleges that its value was not reflected in the used car inventory price.

### The Obsolete Parts Issue

¶ 7 As per the terms of the Asset Sale Agreement, there was to be a physical inventory taken "immediately prior to Closing." If, at the time of the inventory, the value of the parts not including obsolete parts was less than $68,000, the purchase price would be adjusted downward to reflect the difference between $68,000 and the actual value of the parts. If the parts value, not including obsolete parts, was over $68,000, no adjustment would be made.

¶ 8 On or about November 12, 2001, Danny Labrum, Rachel Labrum, Kyle Labrum, and Larry Coet met at the dealership to conduct an inventory of parts in the service department. Sometime during the inventory Mr. Labrum and Mr. Coet "agreed to ... quit counting the inventory." Mr. Labrum asked Mr. Coet "if there was [sic] any obsolete parts" and Mr. Coet said, "I don't have an obsolescence problem." After the closing, Mr. Labrum determined that the dealership had approximately $79,000 in parts, including roughly $18,000 worth of obsolete parts.

### Partial Summary Judgment

¶ 9 Labrum filed a motion for partial summary judgment, arguing that Coet's claims for attorney fees and prejudgment interest that were advanced in the original complaint "[were] completely barred by an unambiguous release signed by Plaintiff (through his attorney), and by Plaintiff's acceptance of the benefits paid pursuant to that release." Relying on the Letter of Understanding, Labrum argued that paragraph nine's release language is clear and unambiguous, and because attorney fees and prejudgment interest were not expressly excepted from the release, such claims were barred. The release language that Labrum was referring to states:

9. Binding Effect; Admissibility of Evaluation; [and] Release of Claims: Upon payment by Labrum of any such sum (if any), Coet, for and on behalf of himself, itself and its owners ... *releases and forever discharges Labrum* and its owners, principals, ... successors and assigns, *from any and all claims, demands, suits, causes of action or obligations of whatever nature, known or unknown, contingent or non-contingent,* that anyone claiming through or under Coet may have or believe to have against Labrum, *including without limitation all claims that relate in any way to the lawsuit with Civil Number 030500537, currently pending in the Fourth Judicial District Court* of Wasatch County, State of Utah (the "Lawsuit"), and any claims asserted or that could have been asserted in that lawsuit, *excepting from this release only such claims as to*

*which there is not a unanimous decision by the Evaluation Team.*[3]

(Emphasis added.)

¶ 10 Labrum further argued that per paragraph three of the Letter of Understanding, the only legal claim excepted from paragraph nine's broad release language was the obsolete parts issue. Paragraph three states:

3. *Objective of Evaluation.* The Evaluation is intended by Coet and Labrum to be, and shall be conducted by the [Accounting] Team as, an independent examination, assessment, and application of the relevant provisions of the Asset Sale Agreement and related documents, *for the purpose of resolving all of the respective claims between the parties, with the exception of whether either party is legally responsible to the other party for parts obsolescence.*

(Emphasis added.)

¶ 11 And finally, Labrum asserted that paragraph ten of the Letter of Understanding precluded the parties from seeking fees and prejudgment interest because those claims were not expressly preserved. Paragraph ten states:

10. Preclusive Effect of Additional Claims: The parties acknowledge and agree that the claims raised in this letter agreement constitute all of the accounting-type claims for damages related to the Asset Sale Agreement and closing. *The parties shall be precluded from raising or asserting (in the Lawsuit or otherwise) any claims for damages related to the Asset Sale Agreement and the Closing, except for:* (i) any accounting issues that are not resolved by the Evaluation Team and (ii) *any legal issues that must be resolved in order to achieve a complete resolution of the accounting issues specifically addressed in this Agreement.*

(Emphasis added.)

¶ 12 Coet opposed the motion, arguing, as it does on appeal, that the release language and the Letter of Understanding referred only to accounting issues, and that legal claims—including attorney fees and prejudgment interest—were to be determined by the

trial court. Coet also argued that the Stipulated Case Management Order, drafted after the Letter of Understanding, narrowed the Accounting Team's scope. The trial court agreed with Labrum and granted its motion for partial summary judgment.

¶ 13 The remaining claims proceeded to a bench trial, at the conclusion of which the trial court dismissed all of Coet's claims with prejudice and awarded Labrum $11,455.26 for obsolete parts. The trial court further concluded that Labrum was the prevailing party and was therefore entitled to attorney fees in the amount of $28,550, pursuant to the Asset Sale Agreement. The fees awarded were limited to those incurred after the settlement and only for the bench trial.

¶ 14 Coet appeals, claiming the trial court erred in (1) dismissing its claims for attorney fees and prejudgment interest; (2) concluding that Labrum was the prevailing party and thereby awarding it attorney fees; (3) concluding that Labrum established the elements of fraud and misrepresentation for the obsolete parts issue; and (4) ruling that Labrum did not owe Coet for the 1992 Ford truck.

## ISSUES AND STANDARDS OF REVIEW

¶ 15 Coet first argues that the trial court inappropriately granted partial summary judgment on the basis that the parties waived their right to attorney fees and prejudgment interest in the Letter of Understanding. Summary judgment is appropriate only if there are no genuine issues of material fact and "the moving party is entitled to judgment as a matter of law." Utah R. Civ. P. 56(c). We review a trial court's grant of summary judgment for correctness, granting no deference to the trial court's legal conclusions. *See Green River Canal Co. v. Thayn,* 2003 UT 50, ¶ 16, 84 P.3d 1134. In doing so, we "view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Surety Underwriters v. E & C Trucking, Inc.,* 2000 UT 71, ¶ 15, 10 P.3d 338 (emphasis omitted). Further, we review a challenge to the trial

---

**3.** Immediately following this language, it is repeated verbatim with Coet's name appearing in

place of Labrum's, and vice versa. Thus, the release was mutual.

court's interpretation of a contract for correctness. *See Green River*, 2003 UT 50, ¶ 16, 84 P.3d 1134.

¶ 16 Coet next argues that the trial court erred in concluding that Labrum was the prevailing party, thereby awarding it attorney fees and prejudgment interest. "Whether a party is the prevailing party in an action is a decision left to the sound discretion of the trial court and reviewed for an abuse of discretion." *Carlson Distrib. Co. v. Salt Lake Brewing Co.*, 2004 UT App 227, ¶ 16, 95 P.3d 1171.

¶ 17 Finally, Coet challenges the trial court's findings that Mr. Coet, as an individual, made a material misrepresentation regarding obsolete parts, and that Coet was not entitled to compensation for the 1992 Ford truck. We review the trial court's findings of fact for clear error. *See Chang v. Soldier Summit Dev.*, 2003 UT App 415, ¶ 12, 82 P.3d 203. " 'In contrast, we review a trial court's conclusions as to the legal effect of a given set of found facts for correctness.' " *Id.* (quoting *Jeffs v. Stubbs*, 970 P.2d 1234, 1244 (Utah 1998)).

## ANALYSIS

### I. Attorney Fees and Prejudgment Interest

¶ 18 Coet first argues that the trial court inappropriately granted partial summary judgment on the basis that the parties waived their rights to attorney fees and prejudgment interest in the Letter of Understanding. "When interpreting a contract, we look to the writing itself to ascertain the parties' intentions, and we consider each contract provision . . . in relation to all of the others, with a view toward giving effect to all and ignoring none." [4] *Green River*, 2003 UT 50, ¶ 17, 84 P.3d 1134 (omission in original) (internal quotation marks omitted). Our primary purpose in reviewing the contract is to ascertain the parties' intentions. *See id.* "If the language within the four corners of the

contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law." *Id.* (internal quotation marks omitted).

¶ 19 In this case, Labrum argued to the trial court, and asserts on appeal, that the Letter of Understanding is unambiguous and clearly waived the parties' rights to pursue attorney fees and prejudgment interest for claims settled by the Accounting Team. In support of its position, Labrum points to cases from other jurisdictions holding that parties to a settlement agreement waive any claims not expressly preserved in the settlement agreement. *See, e.g., Krumme v. West-Point Stevens Inc.*, 238 F.3d 133, 144 (2d Cir.2000) ("Under New York law, a broad release of contractual obligations includes the obligation to pay attorney's fees unless attorney's fees are expressly carved out of the release."); *Estate of Givens v. U.S. Nat'l Bank*, 938 S.W.2d 679, 682 (Mo.Ct.App.1997) (explaining that general releases "release all claims a party may have"); *Jana–Rock Constr., Inc. v. New York State Dept. of Transp.*, 267 A.D.2d 686, 699 N.Y.S.2d 528, 528 (1999) (interpreting general release to waive all claims, including any claim for interest, that petitioner would otherwise have been entitled to bring).[5] In contrast, Coet asserts that the provisions in the Letter of Understanding are inconsistent with each other, yet unambiguously harmonize to mean that the parties clearly intended to present accounting issues to the Accounting Team while reserving legal issues, including attorney fees and prejudgment interest, for the trial court's resolution. We agree with Labrum. In this case, three paragraphs in the Letter of Understanding—paragraphs three, nine, and ten-lead to our conclusion that all claims not expressly reserved in the Letter of Understanding, including claims for attorney fees and prejudgment interest, were waived.

---

4. Neither party disputes that the Letter of Understanding constitutes a contract between the parties.

5. Mirroring these decisions is this court's recent decision in *Iron Head Constr. Inc. v. Gurney*,

2008 UT App 1, ¶¶ 3, 11, 594 Utah Adv. Rep. 14, 176 P.3d 453, where the parties to a settlement specifically preserved a claim for prejudgment interest.

¶ 20 We begin with the proposition that, as a general rule, broad release provisions extend to all claims between the parties except for those which are expressly reserved. *See, e.g., Krumme,* 238 F.3d at 144; *Givens,* 938 S.W.2d at 682; *Jana–Rock,* 699 N.Y.S.2d at 528. In this case, paragraph nine's release language states that upon payment from one party to the other, the paying party is discharged *"from any and all claims, demands, suits, causes of action or obligations of whatever nature, known or unknown, contingent or non-contingent,"* (emphasis added), and specifically those claims related to this lawsuit. The only exception contained in paragraph nine is "claims as to which there is not a unanimous decision by" the Accounting Team.

¶ 21 We look next to any claims, other than those in the paragraph nine provision described above, that were expressly reserved from the release. There are two paragraphs in the Letter of Understanding that reference reserved claims: paragraphs three and ten. As previously noted, paragraph three states that the purpose of the agreement reached via the Letter of Understanding is to resolve "all of the respective claims between the parties, with the exception of whether either party is legally responsible to the other party for parts obsolescence." And paragraph ten states that

> [t]he parties shall be precluded from raising or asserting (in the Lawsuit or otherwise) any claims for damages related to the Asset Sale Agreement and the Closing, except for: (i) any accounting issues that are not resolved by the Evaluation Team and (ii) any legal issues that must be resolved in order to achieve a complete resolution of the accounting issues specifically addressed in this Agreement.

Coet argues that the "legal issues" referred to in paragraph ten include attorney fees and prejudgment interest on the net amount the Accounting Team determined is owed. We disagree. Such an interpretation would vitiate the encompassing language of paragraph nine, the specific exceptions identified in paragraphs three and ten, and the intent of the parties stated in paragraph three.

¶ 22 Based on these three paragraphs of the contract, we first conclude that the purpose of the Letter of Understanding was to enumerate all of the disputed claims between the parties, including those that the Accounting Team would address and those that were reserved for the court's consideration. Second, we conclude that paragraph nine's broad release language is binding on the parties and releases any present or future claims between them except for the obsolete parts issue and any other enumerated issues on which the Accounting Team was unable to reach a unanimous conclusion. And finally, because the parties failed to include a claim for attorney fees and prejudgment interest in the Letter of Understanding, when paragraph nine's release was triggered, i.e., when one party paid the other the sum determined to be owed by the Accounting Team, any claims related to those resolved issues—including claims for attorney fees and prejudgment interest—were waived. While we agree with Coet that attorney fees and prejudgment interest are not typically accounting issues, based on the parties' agreement, such claims were, nevertheless, required to be expressly reserved from the Letter of Understanding's broad release language. We therefore conclude that partial summary judgment was appropriate as a matter of law.

## II. The Prevailing Party

¶ 23 Coet next challenges the trial court's conclusion that Labrum prevailed at trial. Pointing to the language in the Asset Sale Agreement which states that "the prevailing party shall be entitled to recover its costs and reasonable attorneys' fees, whether such sums are expended with or without suit, at trial, on appeal, or in any bankruptcy or insolvency proceeding," Coet argues the trial court erroneously concluded that Labrum was the prevailing party because the trial court failed to consider Coet's recovery based on the Letter of Understanding. "The question of which party is the prevailing party 'depends, to a large measure, on the context of each case, and, therefore, it is appropriate to leave this determination to the sound discretion of the trial court.'" *Radman v. Flanders Corp.,* 2007 UT App 351, ¶ 26, 172 P.3d 668 (quoting *R.T. Nielson Co. v. Cook,*

2002 UT 11, ¶ 25, 40 P.3d 1119). When determining which party prevailed, trial courts generally follow the flexible and reasoned approach. *See, e.g., A.K. & R. Whipple Plumbing & Heating v. Guy,* 2004 UT 47, ¶ 25, 94 P.3d 270. Under this approach,

> the trial court may appropriately consider, among other things (1) contractual language, (2) the number of claims, counterclaims, cross-claims, etc., brought by the parties, (3) the importance of the claims relative to each other and their significance in the context of the lawsuit considered as a whole, and (4) the dollar amounts attached to and awarded in connection with the various claims.

*Radman,* 2007 UT App 351, ¶ 26, 172 P.3d 668 (internal quotation marks omitted).

 ¶ 24 In this case, the trial court determined that Labrum was the prevailing party because it "prevailed on all litigated claims." The trial court refused to consider the amount the Accounting Team determined that Labrum owed Coet. In its ruling, the trial court stated:

> [A] partial settlement in advance of a trial may say nothing about the factual or legal merit of the settled claim. Admittedly, in this case the method of resolution required an assessment of the facts. Nevertheless, this is not always the case. The motives for and methods of pre-trial settlement are simply too diverse. For that reason, a rule requiring the Court to consider pre-trial settlements in determining who is the prevailing party is unworkable. Prevailing party analysis must be grounded only in claims litigated through trial and resulting in a judgment.

¶ 25 Although we may not necessarily agree that a prevailing party determination can *never* include consideration of a pretrial settlement, in this instance, we conclude that the trial court did not abuse its discretion in refusing to consider the settlement agreement reached via the Letter of Understanding. As previously discussed, the parties themselves waived *any* future claims related to those issues the Accounting Team settled, and had the court concluded otherwise, it would have disregarded the parties' intentions set forth in the Letter of Understanding. Consequently, we affirm the trial court's conclusion that Labrum was the prevailing party and, therefore, was entitled to attorney fees and prejudgment interest on the litigated claims.[6] As previously noted, the fees awarded were limited to those incurred after settlement and solely for the issues actually tried and resolved in Labrum's favor.

## III. Obsolete Parts

¶ 26 Coet next challenges the trial court's conclusion "that Labrum acted reasonably in relying on Coet's statement" that Coet did not have an obsolete parts problem. Coet cites *Gold Standard, Inc. v. Getty Oil Co.,* 915 P.2d 1060 (Utah 1996), which states that "[w]hile the question of reasonable reliance is usually a [question of fact], there are instances where courts may conclude that as a matter of law, there was no reasonable reliance." *Id.* at 1067 (citations omitted). Coet, however, fails to identify those particular circumstances or argue why this case does not present a question of fact. Consequently, we treat the trial court's determination that Coet is liable for misrepresentation as a question of fact.

 ¶ 27 "When challenging a trial court's findings, an appellant must marshal the evidence in support of the findings and then demonstrate that despite this evidence, the trial court's findings are so lacking in support as to be against the clear weight of the evidence, thus making them clearly erroneous." *Young v. Young,* 1999 UT 38, ¶ 15,

---

6. Labrum also responds with a brief argument that the Letter of Understanding is a "partial accord and satisfaction"; however, Labrum provides no case law supporting the argument that one can have a "partial" accord and satisfaction. Further, Utah courts hold that "the requirements for an accord and satisfaction ... are (1) a bona fide dispute over an unliquidated amount, (2) *a payment made in full settlement of the entire dispute,* and (3) an acceptance of the payment." *S & G Inc. v. Intermountain Power Agency,* 913 P.2d 735, 738–39 (Utah 1996) (emphasis added). In this instance, it is undisputed that payment based on the Accounting Team's findings did not constitute "a payment made in full settlement of the entire dispute." *Id.* Thus, the requirements for an accord and satisfaction were not met.

979 P.2d 338 (alterations and internal quotation marks omitted). "Due to the trial court's advantaged position, the presumptions favor its judgment. Where there is dispute and disagreement in the evidence, we assume that the trial judge believed those aspects and fairly drew the inferences to be derived therefrom which gave his decision support." *Redevelopment Agency v. Tanner*, 740 P.2d 1296, 1301–02 (Utah 1987) (footnote omitted). Furthermore, we will uphold the trial court's findings unless we conclude that they are "not adequately supported by the record, resolving all disputes in the evidence in a light most favorable to the trial court's determination." *State v. Pena*, 869 P.2d 932, 936 (Utah 1994).

¶ 28 In this instance, Coet argues that the trial court erred in reaching its conclusion because Labrum had experience as a comptroller of a car dealership, he worked in a parts department, he was involved with the parts inventory, he signed two documents stating the parts were valued at over $68,000, and there was not enough evidence at trial to support the trial court's conclusion on fraud and misrepresentation. Labrum argues that this court should affirm the trial court's findings on the basis that Coet failed to marshal the evidence, and, even if Coet marshaled the evidence, the trial court's conclusion is not clearly erroneous.

¶ 29 Although we agree that Coet failed to marshal the evidence on this issue, we address the merits of its argument. *See Martinez v. Media–Paymaster Plus*, 2007 UT 42, ¶¶ 19–20, 164 P.3d 384 (stating that appellate courts have discretion to independently review the record where a party has failed to marshal the evidence). The trial court determined that Coet was liable for obsolete parts based on the fact that Coet "made a representation of [a] presently existing material fact which was false." Coet told Labrum he did not have an obsolete parts problem, that statement was false, and it was "made knowing that Coet had insufficient knowledge upon which to base that representation." The court further found that Coet's statement "was made to induce Labrum to rely and in fact Labrum did rely and was induced to act." Furthermore, the court's conclusion

was supported by Defendant's Exhibit 12, "which shows that approximately $25,000 in parts had not been moved for approximately- or for more than twelve months."

¶ 30 Notwithstanding this conclusion, the court carefully considered the evidence, determining that "some of Labrum's reliance was not ... reasonable." In other words, the court stated that for some of the parts, Labrum was in the best position to determine their status because Labrum could have ascertained whether some of the parts were "damaged or incomplete such that GM would not accept return." On the other hand, the court also concluded that as to the parts valued at $11,455.26, Coet was in the best position to assess their status, and Labrum reasonably relied on Coet's representation that he did not have an obsolete parts problem with regard to those parts. Because the trial court's conclusion is supported by facts in the record, including testimony and exhibits offered at trial, and because we are convinced that the trial court carefully considered that evidence, we determine that the trial court did not abuse its discretion by finding that Coet was responsible to Labrum for a portion of the obsolete parts.

### IV. The 1992 Ford Truck

¶ 31 Coet next challenges the trial court's determination that Labrum was not liable for the 1992 Ford truck. This presents a question of fact, and as such, we will not overturn the trial court's decision unless we determine that it is clearly erroneous. *See id.* The Asset Sale Agreement provides that "[t]he assets ('The Assets') to be purchased and sold hereunder related to the Dealership ... shall include ... [a]ll used motor vehicles which are in the Seller's inventory at the time of Closing which vehicles have been previously titled." Coet states, "There is no dispute that the 1992 Ford pickup was on the dealership lot and included in the inventory paperwork.... What is disputed ... is that the evidence fails to establish that the 1992 Ford Truck should have been included in the used vehicle inventory Labrum purchased in the Asset Sale Agreement." Coet further argues that because the Ford truck did not have a handwritten value on the inventory

sheet as most other vehicles had, it should not have been included in the purchase.

¶ 32 Once again, however, Coet has failed to meet the marshaling burden on this issue. Notwithstanding that deficiency, we believe that the relevant issue under the Asset Sale Agreement is whether the vehicle was in the seller's inventory at closing and was previously titled. The trial court specifically found that "the 1992 Ford pickup was in the seller's inventory at the time of closing ... and that it was a previously titled vehicle." Because Coet does not provide any evidence disputing either of these two requirements, we affirm the trial court's findings.

### V. Attorney Fees on Appeal

¶ 33 Lastly, Labrum requests attorney fees on appeal. Consistent with our conclusions above, we award attorney fees for the portion of this appeal concerning the trial; however, we do not award fees for those issues related to the partial summary judgment because they were waived by both parties.

### CONCLUSION

¶ 34 In sum, we conclude that (1) the trial court did not err by granting partial summary judgment in favor of Labrum; (2) the trial court did not err in refusing to consider the pretrial settlement amount in its prevailing party analysis; (3) the trial court's conclusion regarding fraud and misrepresentation was not clearly erroneous because it was supported by facts in evidence; and (4) the trial court's conclusion that Labrum legitimately purchased the 1992 Ford truck was also not clearly erroneous. Consequently, we affirm and remand for a determination of appropriate costs and attorney fees incurred on appeal.

¶ 35 WE CONCUR: WILLIAM A. THORNE JR., Associate Presiding Judge, CAROLYN B. McHUGH, Judge.