2008 UT App 262

**RICHINS DRILLING, INC., a Utah corporation, Plaintiff and Appellant,**

v.

**GOLF SERVICES GROUP, INC., a Utah corporation; Tuhaye, LLC, a Utah limited liability company; Fidelity Bank; High Country Title; and Does 1–25, Defendants and Appellees.**

No. 20060955–CA.

Court of Appeals of Utah.

July 3, 2008.

John R. Lund and P. Matthew Cox, Salt Lake City, for Appellant.

Gail E. Laser and Bradley J. Neese, Park City, for Appellees.

Before Judges BENCH, DAVIS, and McHUGH.

## MEMORANDUM DECISION

BENCH, Judge:

¶ 1 Plaintiff Richins Drilling, Inc. (Richins) appeals the judgment of the trial court in favor of Defendants Golf Services Group, Inc. and Tuhaye, LLC (collectively, Golf). After a four-day bench trial, the trial court ruled against Richins on its breach of contract, unjust enrichment, and mechanics' lien claims.

¶ 2 On appeal, Richins claims that the trial court violated the parol evidence rule by hearing expert testimony regarding whether Richins's performance complied with industry standards. Specifically, Richins claims that the trial court, relying on this expert testimony, impermissibly added multiple terms to the contract: a maximum price; a time for completion; and a prescribed method of drilling. We review a trial court's interpretation of a written contract for correctness. *See Utah Transit Auth. v. Salt Lake City S. R.R.*, 2006 UT App 46, ¶ 7, 131 P.3d 288 (explaining that challenges to contract interpretations present questions of law).

¶ 3 Richins relies on the parol evidence rule in claiming that the trial court erred in its decision. However, Richins has mischaracterized the applicability of the parol evidence rule to the instant case. "Simply stated, the [parol evidence] rule operates . . . to exclude evidence of [the parties'] prior or contemporaneous conversations, representations, or statements offered for the purpose of varying or adding to the terms of an integrated contract." *Ward v. Intermountain Farmers Ass'n,* 907 P.2d 264, 268 (Utah 1995); *see also Tangren Family Trust v. Tangren,* 2008 UT 20, ¶ 11, 182 P.3d 326. The parol evidence rule is therefore not "a rule of interpretation; it defines the subject matter of interpretation." Restatement (Second) Contracts § 213 cmt. a (1981).

¶ 4 Here, Richins has confused the applicability of the parol evidence rule with the trial court's interpretation of the terms of the contract. The evidence that Richins complains of does not fall under the scope of the parol evidence rule because it consisted of expert testimony evidence and not evidence of any prior or contemporaneous agreement between the parties. The trial court utilized the expert's testimony in interpreting the express terms of the contract, namely that Richins was to adhere to "generally accepted practices and methods customary in the industry" while drilling the well. Further, because the evidence on which the trial court relied does not implicate the parol evidence rule, the trial court did not err in failing to rule preliminarily on whether the contract was integrated.

¶ 5 Richins argues that the trial court impermissibly read a "time for completion" term into the contract. On appeal, the parties have acknowledged that the contract did not specify a time by which Richins was to have completed the well. "[T]he settled rule is that if a contract fails to specify a time of performance the law implies that it shall be done within a reasonable time under the circumstances." *Coulter & Smith, Ltd. v. Russell,* 966 P.2d 852, 858 (Utah 1998); *see also Watson v. Hatch,* 728 P.2d 989, 990 (Utah 1986). The trial court did not use the expert testimony to impose a firm deadline on Richins. Rather, the court relied on the testimony to compare Richins's performance with industry standards. Expert testimony established that a well of the depth contemplated by the parties should have been completed in less than half the time Richins had

worked on the well. The trial court therefore did not err in finding that Richins breached the contract by not completing the well within a reasonable time.

¶ 6 Richins further claims that the trial court erred in adding other terms to the contract, such as "maximum price" and an express drilling method to be used. However, the trial court did not impose a maximum price into the contract. The trial court simply ruled that Richins had breached the term of the contract requiring Richins to adhere to industry standards, as evidenced by the expert testimony. Golf was therefore excused from making the last payment allegedly due Richins. Also, the trial court did not read a drilling method into the contract but ruled that, based on the evidence, Richins's methods did not adhere to the industry standards required by the contract.

¶ 7 Finally, Richins claims that the trial court erred in awarding attorney fees to Golf in relation to the counterclaim, which the parties settled prior to trial. In connection with the settlement, Golf signed a release of all claims related to the counterclaim, including attorney fees (the Release). After the trial, in a lengthy dispute over the amount of attorney fees and costs Richins would be required to pay, Richins claimed that some of the fees and costs awarded were incurred in furtherance of both the counterclaim and Golf's defense (the Contested Fees).[1] The trial court awarded Golf a portion of the Contested Fees without requiring Golf to delineate which of the Contested Fees were specifically attributable to its defense.

¶ 8 A trial court's findings "must show that the court's judgment or decree follows logically from, and is supported by, the evidence. The findings should be sufficiently detailed and include enough subsidiary facts to disclose the steps by which the ultimate conclusion" was reached. *Acton v. Deliran*, 737 P.2d 996, 999 (Utah 1987) (citation and internal quotation marks omitted). We are unable to discern how the trial court arrived at its award of the Contested Fees,

which Golf itself characterized as being attributable to both the defense and the counterclaim. The Release unambiguously states that attorney fees "relating to" the counterclaim are not recoverable, and we therefore remand the award of the attorney fees and costs for a more detailed accounting of which fees and costs were incurred in furtherance of Golf's defense as differentiated from those "relating to" its counterclaim.

¶ 9 As the prevailing party below and on appeal, Golf is also entitled to reasonable attorney fees incurred on appeal. On remand, the trial court should determine the amount of that award.

¶ 10 Accordingly, we affirm in part and remand in part.

¶ 11 I CONCUR: JAMES Z. DAVIS, Judge.

McHUGH, Judge (concurring and dissenting):

¶ 12 I write separately to clarify an additional basis of my concurring opinion on the issues related to the introduction of expert testimony on industry standards and to note my dissenting analysis with respect to the award of attorney fees.

¶ 13 Richins contends that because the contract provided for payment on a time and materials basis, unless and until the contract was actually terminated, Richins was entitled to be paid for all of the time and materials devoted to the project regardless of whether the work performed was defective. Richins asserts that the only remedy available to Golf was to terminate the contract and pay for all time and materials expended up until that termination date. Consequently, Richins argues that the testimony concerning industry standards was irrelevant to a determination of liability or of damages. Like the majority, I disagree.

¶ 14 Paragraph 19 of the contract between Richins and Golf provides, in relevant part: "[Golf] shall not unreasonably withhold ap-

---

1. The Contested Fees with which we are concerned include the award of $15,586 in fees and $770.40 in costs that Golf itself indicated were incurred in furtherance of both the counterclaim

and the defense. Further, the court awarded Golf $4987 in expenses for an unnamed expert witness.

proval of all such work, when performed by [Richins] in accordance with the generally accepted practices and methods customary in the industry." Richins argues that this provision has nothing to do with the payment obligations under the contract. According to Richins, whatever time and material has been expended on the project must be paid at termination, irrespective of whether the work was approved by Golf. I do not believe the language of the contract supports that position.

¶ 15 The "Early Termination Compensation" provision of the contract provides that in the event of early work stoppage, Golf shall pay to Richins "all expenses *reasonably and necessarily incurred* and to be incurred by [Richins] by reason of the [c]ontract." (Emphasis added.) The language "generally accepted practices and methods customary in the industry" provides a framework for determining what work was reasonably and necessarily incurred. In contrast, Richins's interpretation would render meaningless the reasonably and necessary provision as well as Golf's "approval." This is a result we should avoid. *See Novell, Inc. v. Canopy Group, Inc.,* 2004 UT App 162, ¶ 27, 92 P.3d 768 (citing *Plateau Mining Co. v. Utah Div. of State Lands & Forestry,* 802 P.2d 720, 725 (Utah 1990) ("Each contract provision is to be considered in relation to all of the others, with a view toward giving effect to all and ignoring none." (internal quotation marks omitted))). Therefore, I rely on this additional ground for affirming the trial court's consideration of evidence relating to those generally accepted practices and methods, as well as for affirming the trial court's conclusion that Richins's failure to comply with those standards excused Golf from further performance under the contract, *see, e.g., Eggett v. Wasatch Energy Corp.,* 2004 UT 28, ¶ 22, 94 P.3d 193 (breaching party had no right to enforce shareholder agreement); *Holbrook v. Master Prot. Corp.,* 883 P.2d 295, 301 (Utah Ct.App.1994) (breaching party had no right to enforce franchise agreement).

¶ 16 With respect to the attorney fees issue, I depart from the majority. A release must be interpreted like any other contract. *See Peterson v. Coca–Cola USA,* 2002 UT 42, ¶ 9, 48 P.3d 941. Thus, in the absence of ambiguity, the Release should be interpreted according to the intent of the parties as evidenced by the express language of the document. *See Larry J. Coet Chevrolet, Pontiac, Buick, Inc. v. Labrum,* 2008 UT App 69, ¶¶ 18–22, 180 P.3d 765 (holding that letter of understanding waived the parties' rights to pursue attorney fees or prejudgment interest on certain claims). "The test for determining facial ambiguity in a contract [is] ... whether the term, in context of the contract, 'is capable of more than one reasonable interpretation.'" *Novell, Inc.,* 2004 UT App 162, ¶ 26, 92 P.3d 768 (emphasis omitted) (quoting *WebBank v. American Gen. Annuity Serv. Corp.,* 2002 UT 88, ¶ 20, 54 P.3d 1139).

¶ 17 The release language at issue here states: "[Golf] understand[s] and agree[s] that this is a release of all counterclaims against [Richins], as set forth above, and includes, but is not limited to, ... attorneys fees relating to [the] counterclaim[s]...." After trial, Golf sought recovery of the attorney fees and costs incurred in the defense of the action and also for attorney fees and costs incurred in furtherance of both the defense and the counterclaim.

¶ 18 Richins argues that the Contested Fees were waived because the Release should be interpreted as covering attorney fees relating *in any way* to the counterclaim. In contrast, Golf contends that the provision should be interpreted as if it read "attorneys fees relating *solely* to the counterclaim." Thus, it appears that the Release "is capable of more than one reasonable interpretation." [1] *Novell, Inc.,* 2004 UT App 162, ¶ 26, 92 P.3d 768 (internal quotation marks omit-

---

1. Golf argues that it is not reasonable to interpret the Release as waiving significant amounts of fees and costs for a settlement payment on the counterclaim of only $10,000. Golf may be correct, and the trial court may find the "context" of the contract compelling in determining precisely what the parties intended. *See Novell, Inc. v. Canopy Group, Inc.,* 2004 UT App 162, ¶ 26, 92 P.3d 768. Nevertheless, I would allow the trial court to make that determination in the first instance.

ted). The trial court never resolved this dispute directly, ruling instead:

> The Court need not determine what the parties intended by using the phrase "attorney fees relating to counterclaim." Richins Drilling has never contended that the release afforded it broader protection against liability for attorney's fees than that permitted under Utah statutes and case law. Therefore, any such argument is waived.

The majority appears to agree.

¶ 19 I dissent from that portion of the decision of my colleagues because I believe the intent of the parties governs which fees and costs were waived. *See, e.g., Softsolutions, Inc. v. Brigham Young Univ.*, 2000 UT 46, ¶ 41, 1 P.3d 1095 ("If a contract provides for attorney fees, the award 'is allowed only in accordance with the terms of the contract.'" (quoting *Dixie State Bank v. Bracken*, 764 P.2d 985, 988 (Utah 1988))). Only after that question is answered is the trial court free to apply statutory and precedential guidance on how to implement the parties' intent. If the parties here intended to waive all fees and costs related in any way to the counterclaim, the Contested Fees were not properly awarded to Golf. However, if only fees and costs incurred solely in prosecution of the counterclaim were intended to be waived, *all* of the Contested Fees would be recoverable and no further allocation would be necessary. Finally, the parties may have intended that fees and costs primarily related to the counterclaim were waived, or that such mingled fees be allocated proportionately. Without first determining the intent of the parties on the issue, I believe that the application of the rules of allocation are premature. Therefore, I would remand for further proceedings on this issue.